625 A.2d 711

**G. Gordon BRICKHOUSE, Appellant,**

v.

**SPRING FORD AREA SCHOOL DISTRICT, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 2, 1993.

Decided May 3, 1993.

Reargument Denied June 25, 1993.

404

Mark L. Tunnell, for appellant.

Jeffrey H. Quinn, for appellee.

Before McGINLEY and KELLEY, JJ., and KELTON, Senior Judge.

McGINLEY, Judge.

G. Gordon Brickhouse (Applicant) appeals from an order of the Court of Common Pleas of Montgomery County (common pleas court) that affirmed the determination of the Spring–Ford School District (District) School Board (School Board) that the District's decision not to hire Applicant for an open secondary social studies teaching position did not violate the Act commonly known as the "Veterans' Preference Act" (Act), 51 Pa.C.S. §§ 7101 through 7109. Applicant is a Vietnam veteran who is a "soldier" within the meaning of Section 7101 of the Act, 51 Pa.C.S. § 7101.[1] He possesses a bachelor's

---

1. Section 7101 provides:
 As used in this chapter, 'soldier' means a person who served in the armed forces of the United States, or any women's organization officially connected therewith, during any war or armed conflict in which the United States engaged, or who so served or hereafter

degree and a Pennsylvania teaching certificate in social studies.

The position came open near the end of the 1989–1990 school year. Pursuant to the contract with the teacher's union, the District advertised the position internally in June of 1990, to determine if any teachers then in the District wished to transfer to that position. If so, the vacancy would then exist for the position from which that teacher transferred. The posted deadline for applications was July 15, 1990. The District received several applications, including one from Andrew Ruppert (Ruppert), who was a substitute in the District since the end of January and who is not a veteran. The substitute position resulted from another teacher's sabbatical in the spring of 1990. That position was advertised externally, and Ruppert was selected from among eight or nine applicants.

Applicant learned of the social studies opening through a telephone call to the District, and he immediately submitted an application on July 10, 1990, which included a resume, a college transcript, a copy of a book he had written and other materials. His application did not include a required Act 34 Criminal History Report (Act 34 form), because that takes some time to be processed by the Commonwealth. Applicant testified that he was given an extension of time to submit the Act 34 form. The School District's Superintendent, Dr. Edwin D. Coyle (Superintendent), testified that if an application aroused interest but was incomplete in some respect, the practice was to notify the applicant to turn in what was missing. Applicant's college transcript includes a number of "C" grades and an overall grade point average of 2.78 during his final two years, when he attended West Chester State College. His resume shows that in the eleven years since his graduation he had one year's experience teaching social studies, with other work as a paralegal, bookkeeper, manager of a

serves in the armed forces of the United States, or in any women's organization officially connected therewith, since July 27, 1953, including service in Vietnam, and who has an honorable discharge from such service.

trailer park, manager of a hunting lodge and teacher in reform and other special schools. He resided at different times in Pennsylvania, Florida and South Dakota.

On or about July 2, 1990, shortly after the School Board adopted a budget allowing for the open position, an administrative committee chaired by the Superintendent and also including the Assistant Superintendent for Instruction and the Senior High School Principal decided to recommend to the School Board that Ruppert be hired. Ruppert had excellent academic credentials (3.78 grade point average and awards for his work at Albright College) and very favorable evaluations as a long-term substitute teacher.

Applicant went to the school on July 23, 1990. At that time he had an impromptu meeting with the Superintendent and raised the issue of veterans' preference in hiring for the teaching position. The Superintendent told Applicant that he did not believe that the District was required to give such a preference. At its next regular meeting in August of 1990, the School Board decided to hire Ruppert. Applicant filed his action for declaratory judgment on November 16, 1990.

While that action was pending, Applicant agreed to participate in a hearing before the School Board on the matter, which took place on July 8, 1991.[2] The School Board rendered a decision on August 19, 1991. It determined that (1) Applicant's application was never formally completed; (2) if it was, the vacancy had been filled by the time the District received the application; and (3) even if the application was complete and a vacancy existed, the District did not violate the Act by not hiring Applicant. Applicant sought to bring his action in common pleas court to trial, and the District moved to have the court determine the nature of that proceeding, i.e., whether appellate or de novo. By order of January 1, 1992, the common pleas court determined that the proceeding was appellate review of the School Board decision, pursuant to

2. However, Applicant's counsel stated on the record at that hearing that the applicant did not waive any right to assert in a court proceeding that the hearing was of no effect.

Section 754 of the Local Agency Law, 2 Pa.C.S. § 754.[3] The court granted leave to appeal the School Board's decision nunc pro tunc, and it dismissed the complaint requesting declaratory judgment. The court reviewed the decision of the School Board without taking additional evidence and affirmed. Applicant appeals.

■ Applicant frames the questions presented as whether the trial court erred in affirming the School Board's determination that the position had been filled at the time Applicant applied and whether the court and the School Board erred in concluding that Section 7104(a) of the Act, 51 Pa.C.S. § 7104(a), does not mandate that a soldier with the necessary minimum qualifications be hired. Where the common pleas court took no additional evidence, this court also is required to affirm the adjudication of the local agency unless we conclude that constitutional rights were violated, that an error of law was committed or that necessary findings of fact are not supported by substantial evidence in the record. *Morelli v. Fire Code Board of Appeals of Whiteland Township*, 126 Pa. Commonwealth Ct. 202, 559 A.2d 90 (1989).

■ The School Board's determination that no vacancy existed when Applicant applied rests on its Finding of Fact No. 11, which notes the decision of the administrative commit-

3. Section 754, relating to disposition of appeal, provides:
 (a) **Incomplete record.**—In the event a full and complete record of the proceedings before the local agency was not made. the court may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.
 (b) **Complete record.**—In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or it is not in accordance with law, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

tee on July 2, 1990, to recommend Ruppert for the position.[4] Although the fact of the administrative committee's decision is incontrovertible, the question here is one of law—whether that decision had the legal effect of "filling" the vacancy before the advertised deadline and before the receipt of applications from Applicant and others. Applicant argues that the existence of the advertised deadline means that he and others who applied before that date went into the pool of eligible candidates. He contends that as a matter of law the School Board, not the administrative committee, is the employer, and the record shows that the School Board did not hire Ruppert until it accepted the administrative committee's recommendation at its meeting on August 19, 1990.

We agree with Applicant. The administrative committee did not purport to make other than a "recommendation" to the School Board, and a recommendation may be rejected. Despite the administrative committee's decision to make a particular recommendation before the end of the advertised period for receiving applications, the vacancy was not filled until the School Board acted in August. The position was still open when Applicant turned in his substantially complete application on July 10.

The heart of this case involves Section 7104 of the Act in the context of teacher hiring. That Section provides:

(a) **Non-civil service.**—Whenever any soldier possesses the requisite qualifications and is eligible to appointment to or to promotion in a public position, where no such civil service examination [5] is required, the appointing power in making an appointment or promotion to a public position shall give preference to such soldier.

(b) **Name on civil service list.**—Whenever any soldier possesses the requisite qualifications, and his name appears

4. The common pleas court reviewed the uncontroverted evidence that the administrative committee met and decided to recommend Ruppert for the position on July 2, 1990, and Applicant turned in his application on July 10. The court characterized the School Board's determination that the position was filled on July 2 as a finding that was supported by substantial evidence in the record.

5. As described in Section 7103 of the Act, 51 Pa.C.S. § 7103.

on any eligible or promotional list, certified or furnished as the result of any such civil service examination, the appointing or promoting power in making an appointment or promotion to a public position shall give preference to such soldier, notwithstanding that his name does not stand highest on the eligible or promotional list.

(c) **Name not on the civil service list.**—In making an appointment or promotion to public office where a civil service examination is required, the appointing authority or promotional power may give preference to any soldier, who has passed the required examination for appointment or promotion to such position, and possesses the requisite qualifications, although his name does not appear on the eligible or promotional list certified or furnished to the appointing or promoting power.

The parties agree that this case falls under Section 7104(a), because there was no civil service examination and no list of eligibles.

■ Applicant contends that the language of Section 7104(a) that the appointing power "shall give preference" to the soldier is mandatory, not permissive. He notes the long history of veterans' preference statutes in Pennsylvania, dating from the Act of May 19, 1887, P.L. 132, *as amended, formerly* 51 P.S. § 481, repealed by Section 9 of the Act of May 22, 1945, P.L. 837. The Applicant has referred us to *Commonwealth ex rel. Graham v. Schmid,* 333 Pa. 568, 3 A.2d 701 (1939), where the Supreme Court recited that it is reasonable to base selection for public appointment on status as a veteran, to give veterans credit for the discipline, experience and service represented by their military activity, which factors are conducive to the better performance of public duties, where discipline, loyalty and public spirit are essential, and to give consideration for the great service of participating in wars for the preservation of their country.[6]

6. The Court in *Schmid* invalidated a statute that provided for crediting a veteran with 15% on an examination before it was scored. The Court reasoned that the provision created a lower passing score for veterans and thereby overvalued the military service, which resulted in an

Applicant also cites *Eggleston v. City of Philadelphia,* 380 Pa. 158, 110 A.2d 183 (1955). There the City sought a declaration that the predecessor of Section 7104[7] did not apply to hiring streetsweepers, hence there was no need to replace its nonveteran provisional streetsweepers with veterans. The Home Rule Charter of the City provided for the appointment of unskilled laborers after the administration of qualifying tests, and a regulation of the City's Civil Service Commission provided for establishing qualifying medical, physical and other tests graded on a pass/fail basis. The Court noted the requirement that veterans must be qualified before they may be preferred, a fact that the ungraded exam would establish. It then quoted with approval from an opinion of the Attorney General: " 'Whenever a soldier ... possesses the requisite qualifications and is eligible to appointment to such public position, where no civil service examination is required, the appointing power must appoint such soldier to such position, provided he is morally and physically fitted for the position.' " *Eggleston,* 380 Pa. at 163, 110 A.2d at 185–86 (quoting *Preferential Treatment of War Veterans, No. 2,* 38 D. & C. 129, 142 (1940)). The Court held that the predecessor of the Act applied and affirmed the judgment to that effect of the court of common pleas.

The District advances two arguments for its belief that the preference afforded by Section 7104(a) of the Act is not mandatory. First, echoing the reasoning of the common pleas court, it argues that the Section 7104(b) requirement that the appointing power shall give preference to such soldier "notwithstanding that his name does not stand highest on the eligible or promotional list" does establish a mandatory preference. The District concludes that the absence of such language in Section 7104(a) means that the preference under

unreasonable and arbitrary privilege and a violation of the requirement of selection of governmental employees on the basis of ability to perform their duties in an efficient manner. *Schmid,* 333 Pa. at 574, 3 A.2d at 704.

7. Section 4 of the Act of May 22, 1945, P.L. 837, *formerly* 51 P.S. § 492.4, repealed by Section 2 of the Act of August 1, 1975, P.L. 233. Section 7104 is essentially identical.

Section 7104(a) is not mandatory; rather, the legislature intended applicants covered by Section 7104(a) to be compared with other applicants.

We disagree. The subject matter of Section 7104(b) is preference in the context of appointment by means of a civil service examination; the subject matter of Section 7104(a) is appointment where no such civil service examination is required. The phrase "does not stand highest on the ... eligible list" would be entirely anomalous in Section 7104(a), which applies when there is no ranked list of eligibles. Rather, the phrase in Section 7104(b) means that Section is to be applied in the same manner as the preference in Section 7104(a)—the qualified veteran must be awarded the position, even if he or she stands lowest on the list. In *Rasmussen v. Borough of Aspinwall*, 103 Pa. Commonwealth Ct. 109, 519 A.2d 1074 (1987), this court noted that the phrase "shall give preference" in Section 7104(b) is mandatory, in contrast with the phrase "may give preference" in Section 7104(c), which is permissive. Both Sections 7104(a) and (b) provide that the appointing power "shall give preference" to the soldier, and nothing in the language or the context of the statute indicates an intent that one subsection be considered mandatory and the other permissive.

Second, the School Board notes society's concern for education and argues that a mandatory preference for a veteran in filling a teacher vacancy, without regard for the experience and qualifications of the soldier and of other applicants, is detrimental to public education and creates an absurd and unreasonable result. Applicant responds that there is no question that the legislature intended that the Act apply in the context of public education, citing *Northeastern Educational Intermediate Unit No. 19 v. Stephens*, 98 Pa. Commonwealth Ct. 127, 510 A.2d 1267 (1986). There one of two shop teachers in an intermediate unit was to be furloughed. If the military service of the one who was a Korean War veteran and a "soldier" under the Act were counted toward his seniority, pursuant to Section 7107 of the Act, 51 Pa.C.S. § 7107, he would remain employed. This court held that the legislature

intended the Act to apply to the School Code and that employment as a public school teacher was sufficient in itself to establish that the employment was in a "public position" within the meaning of the Act.[8] This holding, as well as the lack of any exception in the Act for public education, refutes the District's claim of an exemption. Further, so long as a preferred veteran possesses the "requisite qualifications," we perceive no absurd result in hiring such a person.

■ Applicant asserts that he does possess the "requisite qualifications" for the position within the meaning of Section 7104(a), which he contends consist of being over the age of eighteen and possessing a valid teaching certificate. The District responds that Applicant's possession of a teaching certificate makes him "certified" for a teaching position, not "qualified." The District cites *Purcell v. City of Altoona*, 364 Pa. 396, 72 A.2d 92 (1950), where a firefighter challenged the appointment of nonveterans to the position of hoseman-mechanic. The Supreme Court noted that a member of the fire department must first qualify for the position by demonstrating the necessary requisite technical skill, in order to come within the scope of the Act. The record showed no evidence that the complaining veteran was technically fit for the job, hence his petition was correctly dismissed. Here, the District asserts, a "paper review" of Applicant's application indicated that he was not qualified and so did not merit an interview.[9]

---

**8.** *Northeastern Educational Intermediate Unit No. 19* takes note of another rationale for veterans' preference, which, although particularly applicable to the seniority calculation involved in that case, also relates to veterans' preference in general:

> It is obvious that, by appending the veteran's time spent in military service to his other service when computing seniority for furlough purposes, the Commonwealth is compensating the veteran for the disadvantage he would otherwise have suffered because of his exclusion from the labor market during the period of his service.

*Northeastern Educational Intermediate Unit No. 19*, 98 Pa. Commonwealth Ct. at 138, 510 A.2d at 1273.

**9.** The Superintendent testified that the administrative committee did not consider any further applications after it decided to recommend Ruppert, and all applications received after that decision were simply placed in the social studies file to be held for one year. However, he

His resume showed that he appeared to jump from state to state and occupation to occupation, and that he possessed no real experience teaching history.

The examination of the Superintendent at the hearing before the School Board includes the following:

A. That was the other interesting thing about the resume. A lot of work in campgrounds, trailer parks, construction work up and down the coast and then moving around quite a bit, but we were looking for someone with strong academics in the area of history. And he did not have the kind of strong background that we would be looking for in social studies.

Notes of Testimony of July 8, 1991, at 73; Reproduced Record (R.R.) 197.

Q. As the superintendent of the Spring–Ford Area School District, would [Applicant's possession of a teaching certificate and a college degree] make [Applicant] qualified to teach in the Spring–Ford area schools?

A. No. That would make him certified to teach in the Commonwealth of Pennsylvania, but not qualified to teach in the Spring–Ford Area School District.

Q. Can you describe what—briefly, what is it that you are looking for in a social studies teacher?

A. Well, a social studies teacher, a kindergarten teacher or a science teacher, we are looking for high academic performance, outstanding recommendations, current references.

*Id.* at 75–76; R.R. 199–200. The District's position comes down to an assertion that it has established "requisite qualifications" for teaching positions in the District that are higher than those established by the Commonwealth for certification to teach in general, and Applicant did not possess *the District's* requisite qualifications.

In our view, this position is contrary to the intent of the legislature. In *Schmid* the Supreme Court undertook an in-

also testified that he reviewed Applicant's application on or about July 23, 1990, and decided that Applicant did not merit an interview.

depth review of veterans' preference acts nationwide. In discussing those such as Section 7104(a), which give preference where the position does not require a civil service examination, the court noted that some provided for preference only where veterans possessed "equal qualifications" with nonveterans, some required preference if the veteran were "reasonably qualified to discharge the duties involved" or possessed requisite qualifications necessary to discharge the duties, and others, with no such limitations, had been held constitutional by construing them "to contain the implied condition that the preferred veterans be qualified to do the work in a reasonably efficient manner.... In all these cases the courts found, though mandatory words were used, the implied condition that the veterans must possess reasonable qualifications for the positions." *Schmid,* 333 Pa. at 574–75, 3 A.2d at 704–05. Considering statutes relating to preference after a veteran has passed a civil service examination (such as Section 7104(b) of the Act) the Court said:

> Our conclusion from these decisions is that, so long as the statute requires passage of the examination, a veteran may constitutionally be preferred over non-veterans whether the statute be mandatory or directory. In either case the minimum qualification for appointment is success in an examination. Its passage satisfies the requirement that appointments of public employes be made only of persons reasonably fitted for the position.

*Id.* at 577, 3 A.2d at 706.

We see no basis for accepting the District's argument that "possess[ing] the requisite qualifications" in Section 7104(a) means other than having fulfilled state-mandated requirements and possessing a certificate to teach in the area involved. If nothing more, a teaching certificate conferred by the Commonwealth indicates that the Commonwealth regards the holder as being "reasonably qualified to discharge the duties" of a teacher. Although no civil service test is involved for the position in question here, the requirement of holding a valid teaching certificate is analogous to the passing of a civil service test. Effectively, then, the applicant thereby estab-

lishes that he or she is "reasonably fitted" for the position. The District may have the good fortune to limit its consideration to candidates with "strong academic performance [and] outstanding recommendations," but it may not defeat the purpose of the Act by recognizing other "requisite qualifications" beyond what the Commonwealth established.[10] To the extent that the Superintendent identified Applicant's propensity to roam the country and noted he held various jobs as a result, the Superintendent considered him less qualified to teach. We fail to see the validity of such criteria. We reject the notion that a non-migratory history is a "requisite qualification" for performing the duties of a teacher within the meaning of Section 7104(a) of the Act. Accordingly, we reverse the decision of the School Board insofar as it concluded that the position was filled before Applicant applied and that Section 7104(a) of the Act does not require the District to give preference to a "soldier."

Because the common pleas court concluded that no vacancy existed, it expressly did not reach the question of whether Applicant's application was complete. As noted above, where the common pleas court received no additional evidence, this court reviews the determination of the local agency. *Morelli.* The School Board's determination lists as its first basis for not sustaining Applicant's appeal that his application was never formally completed because he never submitted the original Act 34 form.

At the hearing before the School Board on July 8, 1991, Applicant introduced into evidence a copy of the completed Act 34 form, showing no criminal record, which he allegedly either mailed or personally delivered to the District. N.T. 46–47; R.R. 170–71; Exhibit P–3; R.R. 17. Counsel for the

---

**10.** In addition, Section 7105 of the Act, 51 Pa.C.S. § 7105, although not cited by either side, appears to prohibit the imposition of overly strict standards for qualification:

> The lack of academic or scholastic training or experience, age, loss of limb or other physical impairment which does not in fact incapacitate any such soldier shall not be deemed to disqualify him, provided he possesses the other requisite qualifications to satisfactorily perform all of the duties which the position requires.

District at first objected to the document. However, counsel then stated that the District had no objection to the document as a true and correct copy of an Act 34 form, but the District continued to maintain that they never received it. The School Board admitted the document into evidence. N.T. 47; R.R. 171.

The District does not dispute that Applicant was informed that the position was filled. Also, the District admittedly believed it was not required to acknowledge veterans' preference in teacher hiring. Under these circumstances, we conclude that whether the School District actually received the form later admitted into evidence is immaterial. It is impractical to require an applicant to submit a form in the face of the School District's express rejection of his application, particularly when the School Board also incorrectly interpreted the law concerning veterans' preference. Because a document was admitted into evidence as a true and correct copy of the Act 34 form there is no need to remand for Applicant to submit or resubmit the document.

Accordingly, we reverse the decision of the court of common pleas affirming the decision of the School Board. We find that the School Board and the common pleas court erred in their determinations that the position was properly filled and also that they misinterpreted the import of the legislature's grant of a veterans' preference. The School District must hire Applicant for the position in question, and it must award back pay and benefits subject to mitigation based upon Applicant's activities subsequent to the School District's wrongful failure to hire him.

## ORDER

AND NOW, this 3rd day of May, 1993, the order of the Court of Common Pleas of Montgomery County at No. 90–20290, dated April 16, 1992, affirming the decision of the Spring–Ford Area School District Board of School Directors, dated August 19, 1991, is reversed. This matter is remanded to the Court of Common Pleas with instructions to remand to

the School Board for a determination of the back pay and other benefits due to G. Gordon Brickhouse.

Jurisdiction is relinquished.