656 A.2d 483

**G. Gordon BRICKHOUSE, Appellee,**

v.

**SPRING–FORD AREA SCHOOL DISTRICT, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1994.

Decided April 4, 1995.

other meaningful evidence of guilt. *See Peterkin, supra,* 538 Pa. 455, 649 A.2d 121.

178

Jeffrey H. Quinn, Philadelphia, for Spring Ford Area School Dist.

Mark P. Widoff, Harrisburg, for amicus—Pa. State Educ. Ass'n.

Stephen S. Russell, Harrisburg, for amicus—Pa. School Bd. Ass'n.

Mark L. Tunnell, West Chester, for G. Gordon Brickhouse.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

*OPINION*

FLAHERTY, Justice.

When a veteran has applied for a vacancy on the teaching staff of a public school and establishes that he is certified to teach in Pennsylvania, must the veteran be hired for the position pursuant to the Veterans' Preference Act, 51 Pa.C.S. § 7104, when the other applicants are non-veterans?

In 1990 Brickhouse applied for a position in the social studies department of the secondary level at the Spring–Ford Area School District ("the school district"). When Brickhouse learned that he was not selected for the job, he appealed the failure to hire and also brought a civil action seeking declaratory relief.

In response to Brickhouse's appeal, the school board held a hearing pursuant to the provisions of the Local Agency Law, 2 Pa.C.S. § 101 et seq. A complete record was transcribed. After hearing, the board found that the position already had been filled at the time of Brickhouse's application, that his application was incomplete, and that he was not, in any event, entitled to the position.

Brickhouse appealed the board's decision and requested a trial de novo and, in the alternative, leave to appeal nunc pro tunc. The trial court granted the motion to appeal nunc pro tunc and dismissed the complaint for declaratory relief. Further, the trial court affirmed the factual findings of the school board.

On appeal from that determination, Commonwealth Court reversed, holding that the Veteran's Preference Act requires that Brickhouse be hired. It rejected the school district's arguments that section 7104(a) does not mandate a preference and also that the Veteran's Preference Act does not apply to school employment. In addition, Commonwealth Court rejected the school district's argument that the vacancy had been filled already when Brickhouse applied and that Brickhouse was not qualified, holding that since Brickhouse holds a valid teaching certificate, he is qualified. The school district argued that although Brickhouse was certified to teach in Pennsylva-

nia, he was not qualified to teach in this particular school district, where high academic performance, outstanding recommendations, and current references were required. Commonwealth Court stated that the district "may not defeat the purpose of the Act by recognizing other 'requisite qualifications' beyond what the Commonwealth established." 155 Pa. Cmwlth. 402 at 415, 625 A.2d 711 at 717.

The school district petitioned for allowance of appeal and we granted allocatur in order to determine the manner in which the Veterans' Preference Act is to be applied to the facts of this case.[1]

The Veteran's Preference Act, § 7104(a) provides:

(a) Non-civil service. Whenever any soldier possesses the *requisite qualifications* and is *eligible to appointment* to or to promotion in a public position, where no such civil service examination is required, the appointing power in making an appointment or promotion to a public position shall give preference to such soldier.

51 Pa.C.S. § 7104(a). (Emphasis added.) There is no dispute that Brickhouse is a "soldier" within the terms of the act. Although other sections of the act concern the hiring and promotion of veterans in cases involving a civil service list or examination, see subsections 7104(b) and (c), in this case there is neither a civil service list nor an examination applicable to this job. Instead, this case involves criteria for hire formed by the school district.

The case turns on the meaning of the statutory phrases "requisite qualifications" and "eligible to appointment." If Brickhouse has the necessary qualifications and is eligible for appointment, he must be given "preference" under the terms of the act.

1. The parties have also raised question as to whether the Commonwealth Court applied the proper standard of review and whether there was a vacant teaching position at the time of Brickhouse's application. Because of our disposition of the case, we decline to address these matters.

The school district argues, in essence, that its requisite qualification for hire is that the candidate be a high achiever. The Superintendent of the school district testified as follows:

Q. Can you describe what—briefly, what is it that you are looking for in a social studies teacher?

A. Well, a social studies teacher, a kindergarten teacher or a science teacher, we are looking for a high academic performance, outstanding recommendations, current references.

The school district states that Brickhouse's application was weak in that there was no letter accompanying the application dealing with the position applied for and explaining his interest, nor was there any letter explaining how his background, which was primarily non-academic, qualified him for the position. Additionally, Brickhouse's grade average of 2.78 was deficient and his work history was very little related to teaching social studies. In the prior eleven years, Brickhouse had taught social studies for one year, but he had spent the rest of this time working as a paralegal, a bookkeeper, a manager of a trailer park, a manager of a hunting lodge, and a worker at reform schools or other special schools for children.

The person hired, on the other hand, had recently graduated with a 3.80 grade point average and had received several awards for his academic achievements. Additionally, this person had received very good evaluations with respect to his work as a long term substitute within the school district.

Brickhouse, however, argues that to be qualified to teach in Pennsylvania, the only requirements are that one be of sound moral character, over eighteen years of age and be certified to teach by the Commonwealth, and that once he is qualified, he must be awarded the job.

■ The landmark case in the area is *Commonwealth ex rel. Graham v. Schmid,* 333 Pa. 568, 3 A.2d 701 (1938), which held:

while it may be perfectly lawful to prefer veterans, there must be some reasonable relation between the basis of preference and the object to be obtained, the preference of

veterans for the proper performance of public duties. Public policy, as well as constitutional restrictions, prohibits an unrestrained preference as it does a preference credit based on factors not representative of their true value.

\* \* \* \* \* \*

The fact that veterans, either through voluntary enlistment or conscription, have been to wars for the preservation of their country should be given some consideration. It is the greatest service a citizen can perform, and it comes with ill grace for those of us not in such wars to deny them just consideration.... [O]n the other hand, where war service is appraised, in the allotment of public positions, beyond its value, and the preference goes beyond the scope of the actual advantages gained in such service, the classification becomes void and the privilege is held unreasonable and arbitrary. Public policy demands such a rule of law. It is essential to the administration of public affairs that governmental employees be selected on the basis of their ability to perform the duties imposed upon them in an efficient manner, and if public servants are not selected on this basis, the appointing power violates its oath of office; where the legislature so provides, it offends the constitutional mandate.[2]

333 Pa. at 573–74, 3 A.2d at 704. It is clear, thus, that there must be a reasonable relation between the basis of the preference (being a veteran) and the object to be obtained (preferring veterans to properly perform public duties). In other

**2.** The "constitutional restrictions" and the "constitutional mandate" referred to in *Schmid* derived from Article III, Section 7 of the Pennsylvania Constitution, which at that time prohibited granting special or exclusive privileges or immunities. In 1967, this language was deleted from the constitution by amendment.

However, *Schmid* is also grounded on constitutional principles sounding in due process and equal protection:

[Veterans'] preferences have been considered by the courts under constitutional prohibitions against special privileges and unreasonable classification, and while the constitutional provisions differ somewhat in the various jurisdictions, they are similar in that *all permit reasonable classifications and prohibit unreasonable ones and arbitrary privileges.*

333 Pa. at 573, 3 A.2d at 704. (Emphasis added.)

words, veterans are not to be preferred in the assignment of public jobs merely on the strength of being veterans. They must be, in some sense, "qualified."

■ *Schmid* also aids in defining the meaning of "qualified." Veterans who seek to take advantage of the act must be able to accomplish "proper performance of public duties." That is, a veteran seeking to take advantage of the preference mandated by the act must be able to demonstrate his ability to perform the job at the level of skill and with the expertise demanded by the employer. Such a demonstration would establish that he will be able to "properly perform" the job duties.

■ Since the applicant must demonstrate his ability to perform, merely having the appropriate certification or licensure, without more, would not serve to qualify an applicant for the job. Thus, Brickhouse's assertion of qualification based on minimal age, good moral character, and certification to teach, must fail. These features may establish a veteran's eligibility to be considered for the position, but they will not establish that he is "qualified" for the job.

Were ability to perform at the level of expertise demanded by the employer not required, not only would public policy mentioned in *Schmid* be violated, but the likelihood of absurd results, forbidden by the Statutory Construction Act, 1 Pa.C.S. § 1922(1), would be present in hundreds if not thousands of hirings. Amicus Pennsylvania School Boards Association suggests the following possibilities:

> A person runs a mess hall for twenty years in the army. A school district with a thirty million dollar budget seeks a business manager. The mess hall sergeant has no post-high school education. The sergeant applies for the job and is the only veteran to apply. Ten other school business managers—all with experience—apply for the job. There are no state requirements such as certification for the job. According to the Commonwealth Court, the sergeant would get the job simply because he is a veteran.

Or, a school district is seeking a Spanish teacher for an accelerated program. Because of the sophistication of the students, an experienced teacher is sought who also has "hands on" experience in using the language in a Spanish-speaking country. A veteran applies who received Spanish certification twenty-five years ago, has never taught nor used the language since then. According to *Brickhouse,* the veteran is entitled to the position.

Although these scenarios are hypothetical, they illustrate problems of a sort likely to be faced by public employers.

Applying to this case the rule that in order to be "qualified," veterans first must demonstrate an ability to carry out the job in question at the level of expertise demanded by the employer, it is apparent that Brickhouse was not qualified for the job as the school district had defined it. The school district sought a person of high academic performance with outstanding and current references. Brickhouse's academic record, at best, is mediocre, and he did not furnish the required outstanding recommendations and current references.[3] Putting it another way, the school district was looking for a highly motivated, currently involved teacher who had accomplished considerable success in his teaching endeavor. Had Brickhouse met these criteria, he should have been preferred under the act.

We are mindful that a public employer might be able to formulate qualifications for a job in such a way as to defeat the veterans' preference required by the act. When such formulations are undertaken in bad faith without regard to legitimate need, they must fail, but determination of the legitimacy of the employer's formulation of hiring criteria can be done only on a case by case basis.

If it is required as a matter of public policy, as we have held, that a person who is preferred under the Veterans'

3. The record contains three references which concern the years 1984 through 1986. These references were apparently submitted with Brickhouse's 1990 application. Although the references speak highly of Brickhouse's work and his character, they are not current and they do not concern teaching.

Preference Act must be able to demonstrate his ability to perform the job in question at the level of expertise demanded by the employer, then the employer must be free to set the hiring requirements of that job as they reasonably relate to the duties to be performed in order to ensure that the person hired will be competent.

In this case, there is no doubt that the school district's criteria for employment were rationally related to the job and that Brickhouse's credentials did not qualify him for the job. Were these considerations less apparent than they are, we would remand for an evidentiary hearing to determine whether the employer's requirements for the job were reasonable and the whether the applicant was "qualified" with respect to those requirements.

Whatever Brickhouse's accomplishments may be, and they appear to be many, he is not accomplished in the particular manner sought by the school board. He is not, therefore, qualified for the job which was available, and preference under the Veterans' Preference Act, accordingly, does not apply.[4]

Order of Commonwealth Court is reversed.

PAPADAKOS, J., did not participate in the consideration or decision of this matter.

ZAPPALA, J., files a concurring opinion which is joined by CAPPY, J.

CASTILLE, J., files a dissenting opinion.

MONTEMURO, J., is sitting by designation.

---

**4.** Contrary to Commonwealth Court, see 155 Pa.Cmwlth. at 415, n. 10, we do not perceive that a different result is required by § 7105 of the Veteran's Preference Act. That section provides:

> The lack of academic or scholastic training or experience, age, loss of limb or other physical impairment which does not in fact incapacitate any such soldier shall not be deemed to disqualify him, provided he possesses the other requisite qualifications to satisfactorily perform all of the duties which the position requires.

Brickhouse does not "lack" academic training; he has a college degree. He is disqualified because he does not possess "the other requisite qualifications to satisfactorily perform all of the duties which the position requires."

ZAPPALA, Justice, concurring.

I concur in the judgment of reversal. I agree with the majority that a public employer may establish criteria for employment for particular positions that exceed the minimum certification requirements that might be otherwise established by law, and that these criteria would be the "requisite qualifications" under which the Veteran's Preference Act, 51 Pa.C.S. § 7104(a), is to be applied. To be meaningful, however, it is necessary that such criteria be clearly spelled out in advance of the selection process, and not merely be subjective conclusions, formed ad hoc during or after the selection process, based on the relative credentials of the actual applicants. I find no evidence in the record that the school district established such criteria in this case.

Even so, I do not consider it necessary to reach the question of whether the school district was required to give the appellee an absolute preference upon receipt of his application. Following the hearing, the board found that the position had, for all intents and purposes, been filled on July 2, 1990, prior to the appellee's application on July 10. Although the board had not taken formal action to approve the hiring of the candidate recommended by the Administration Committee on July 2, because no meetings were scheduled until August, the position was considered closed.

Commonwealth Court treated the Administration Committee's recommendation to be insufficient, as a matter of law, to close the position, holding that the vacancy was not filled until the board acted in August. The court concluded, therefore, that the appellee's application had to be considered along with any others submitted before the "advertised deadline." This analysis ignores a critical finding of fact.

Although the appellee learned of the posting of the position, and its provision that applications could be submitted until July 15, the board found that this was an internal posting only, pursuant to the contract between the teacher's union and the district, to allow teachers within the system the opportunity to apply for vacancies prior to their being publicly advertised. The common pleas court held, and I agree, that this finding

was supported by substantial evidence. Based on this fact, the appellee's July 10 application did not "beat the advertised deadline," since the deadline did not apply to him. Instead, the application was premature. The appellee, despite being aware of the position, would only have been eligible to apply for it if the board had rejected all candidates from within the system and elected to entertain outside applications.

As the common pleas court's decision affirming the board's action on this ground was correct, I join in reversing the Commonwealth Court's order reversing that decision.

CAPPY, J., joins this concurring opinion.

CASTILLE, Justice, dissenting.

I respectfully dissent. The sole issue in this case is whether the Veterans' Preference Act at 51 Pa.C.S. § 7104(a) (the "Act") mandates that a veteran seeking a teaching position with a school district meet the skill and expertise requirements established by that individual school district or, in the alternative, whether such veteran must merely meet the more general skill and expertise requirements established by statute. In holding that the veteran-applicant must satisfy the eligibility requirements set forth by an individual school district, the majority infuses the Act with standards not contemplated by the General Assembly, thereby leaving Pennsylvania veterans with an illusory preference benefit.

In support of its position, the majority contends that the individual school district should have been able to formulate qualification standards beyond those established by statute and that Brickhouse did not meet this particular school district's qualifications for the teaching position in question which allegedly included high academic performance, outstanding recommendations, and current references. Majority Opinion at 180. However, the majority ignores the statutory provision directly following Section 7104 which provides that "the lack of academic or scholastic training or experience ... shall not be deemed to disqualify [any veteran from the benefits of the Act], provided he possesses the other requisite qualifications...." 51 Pa.C.S. § 7105. This succeeding provision

makes it clear that a veteran's qualifications are not to be considered relative to any *ad hoc* standards established by a potential public employer, but only relative to that which makes him qualified to perform the duties of the position in question. In short, by supplementing Section 7104 with Section 7105, it is evident that the General Assembly sought to ensure a veteran's hiring preference even when that veteran possesses only the minimum criteria required by statute for the job.

In *Commonwealth ex rel. Graham v. Schmid,* 333 Pa. 568, 3 A.2d 701 (1939), this Court considered the separate issue of whether the veterans' preference provision of the Third Class City Law relating to the examination and employment of building inspectors was constitutional in light of the now-repealed Pennsylvania constitutional prohibition against granting class privileges. This Court held that a veterans' preference statute is constitutional since there exists a rational relationship between the basis of the preference (status as a veteran) and the object to be obtained (preferring veterans for public-duty employment). *Id.,* 333 Pa. at 573–574, 3 A.2d at 704. We grounded that analysis on the assumption that a veteran is reasonably fitted for a public-duty position (and, therefore, the rational relationship will be deemed to exist) when a veteran-applicant possesses only the minimum qualifications necessary to fulfill the duties of the public-duty position sought. *See id.* ("[t]he underlying principle in all cases is that to sustain any preference the veteran must [merely] posses the minimum qualifications necessary to perform the duties involved").[1]

The majority, on the other hand, asserts that a rational relationship is found only where "a veteran seeking to take advantage of the preference mandated by the act [is] able to demonstrate his ability to perform the job at the level of skill

1. It must be noted that in *Schmid* a veteran was deemed to possess the minimum qualifications necessary for a position if he had passed the relevant examination. Although there is no examination requirement at issue in the instant case, the requirement of holding a valid teaching certificate is sufficiently analogous to the passing of a civil service examination so that *Schmid* is instructive to the facts before us.

and with the expertise demanded by the employer." Majority Opinion at 183. Notwithstanding the majority's ability to manufacture its conclusion from whole cloth (obviously not khaki-colored) and not from our decision in *Schmid* or from the language of the applicable statutes, the instant appellee possesses the qualifications necessary for a teaching position in this Commonwealth. Brickhouse is a graduate of an accredited college who holds a valid teaching certificate accepted by the Commonwealth, is over 18 years of age, is a U.S. citizen, and is morally fit for the position. *See* the Public School Code of 1949 at 24 P.S. §§ 11–1109, 12–1201. Accordingly, because appellee possesses the requisite statutory minimum qualifications for the position, he is entitled to the veteran's preference mandated by the Act, notwithstanding the "higher" qualifications created by the school district.

Further, as a result of the majority's position, public employers may easily undermine the Act's broad altruistic objectives merely by defining for themselves the level of "requisite qualifications" necessary to perform the duties of the position in question. For example, a Commonwealth agency determined to evade the veterans' preference statute could merely select a specific candidate with a certain employment history for an open position and then apply that candidate's particular qualifications as the standard "requisite qualifications" against which a veteran must compete who would otherwise be entitled to the statutory preference, thereby disregarding the clear mandate of the Act. The majority's solution to this problem is that the "determination of the employer's formulation of hiring criteria can be done only on a case by case basis." Majority Opinion at 184.

In light of the great service and personal sacrifice rendered by Pennsylvania's veterans both in time of war and in time of peace, the statutory preference granted to our veterans must be a reality, not illusory or a mere gesture and certainly not subject to endless litigation regarding each public employer's formulation of the "requisite qualifications." Veterans' preference statutes exist as a form of consideration for society's recognition that (1) veterans generally bring highly valued skills conducive to the better performance of public employ-

ment duties, including discipline, experience and service; (2) veterans suffer from a comparative disadvantage relative to non-veterans because of their exclusion from the labor market during their period of military service to the nation; and (3) veterans have rendered the greatest service a citizen can perform namely, the defense of our liberty. *See Schmid,* 333 Pa. at 573–574, 3 A.2d at 704; *Northeastern Educational Intermediate Unit No. 19 v. Stephens,* 98 Pa.Commw. 127, 138, 510 A.2d 1267, 1273 (1986). These considerations highlight the very reason why the language in our preference statute is mandatory and not merely permissive: the General Assembly intended to reward veterans' service to the country and intended that veterans have the actual benefit of the preference granted by the Act. *See also* 1 Pa.C.S. § 1928(c) (statutes not included in any class of statute listed by the legislature as requiring a strict construction (such as the Act) must be liberally construed to effect its object and to promote justice).

The Act's use of the mandatory term "shall" with reference to granting the preference to veterans possessing the requisite qualifications points strongly to a legislative intent to take from the employer most (if not all) discretionary power of appointment in the case of a veteran. Indeed, although the legislature can make a law to delegate a power to carry out some administrative function upon which the law depends, the legislature cannot delegate its constitutional duty to make law and the policy choices inherent in such action. *Blackwell v. Commonwealth, State Ethics Commission,* 523 Pa. 347, 359–360, 567 A.2d 630, 636–637 (1989), *reargument granted,* 524 Pa. 403, 573 A.2d 536 (1990), *aff'd,* 527 Pa. 172, 589 A.2d 1094 (1991) (citations omitted). The legislature may delegate its power to determine the application of a specific statute only if in so doing it surrounds such power with definite standards, policies, and limitations to which the delegatee must strictly adhere and by which the delegatee is strictly governed. *Id.* In sum, the principal limitation on the delegation of legislative power is that basic policy choices must be made by the legislature, not by the delegatee who may wish to ignore or evade those policies. *Id.*

Here, the Act merely states that the preference shall be granted in those cases in which the veteran possesses the "requisite qualifications" for the position. 51 Pa.C.S. § 7104(a). The General Assembly did not, within this statutory provision, define what qualifications are "requisite." But in the Public School Code of 1949 at 24 P.S. §§ 11–1109, 12–1201, the General Assembly defined the qualifications: a person is qualified to teach in the public schools of the Commonwealth if that person holds a valid teaching certificate accepted by the Commonwealth, is over 18 years of age, is a U.S. citizen, and is morally fit for the position. Pursuant to the majority's analysis, each potential public employer is now granted the discretionary authority to define the level of "requisite qualifications" a veteran must possess to trigger the preference. Vested with this discretionary authority, public employers may define "requisite qualifications" by reference to the minimum statutory qualifications or by reference to its own skill and expertise requirements. In so doing, public employers are thereby empowered to redefine one of the basic premises on which the Act rests in that individual employers may now decide for themselves, without reference to the legislature's mandate, the essential scope and application of the Act. In short, the majority opinion vests public employers with the power to make a basic policy choice in violation of the general prohibition against such delegation of authority. The majority's interpretation of the Act, then, ostensibly renders the veterans' preference statute unconstitutional, a clearly unwarranted result under the law.[2]

Accordingly, public employers should refer only to the qualifications defined by the General Assembly and its statutes as necessary to fill a public-duty position. As stated

**2.** My research also indicates a potential due process problem with the majority's analysis of the Act. The U.S. Court of Appeals for the Third Circuit recently held that the Pennsylvania Veterans' Preference statute at 51 Pa.C.S. § 7104(b) granting a promotion preference (as opposed to a hiring preference) confers a constitutionally protected property right upon a veteran. *Carter v. City of Philadelphia,* 989 F.2d 117, 122–123 (1993). As such, the grant or denial of the statutory preference must comport with basic notions of due process. *See id.* In that regard, a

*supra,* the instant appellee possesses the qualifications defined by statute as necessary to hold a teaching position in this Commonwealth. He is, therefore, entitled to the preference mandated by the veterans' preference Act. The majority decision makes this another day of infamy with regard to the rights of Pennsylvania's veterans. For the foregoing reasons, I would affirm the order of the Commonwealth Court.

---

statute which requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127–28, 70 L.Ed. 322 (1926). This constitutional safeguard ensures that state power will be exercised only on behalf of policies reflecting an authoritative choice among competing social values and that the danger of arbitrary discrimination in the administration of the laws is reduced. *Kolender v. Lawson,* 461 U.S. 352, 357–358, 103 S.Ct. 1855, 1858–59, 75 L.Ed.2d 903 (1983). Here, as stated, the majority's analysis of the Act now confers on each public employer the discretionary authority to define the level of "requisite qualifications" a veteran must possess to trigger the preference. To the extent the statutory phrase "requisite qualifications" then takes on hundreds or even thousands of different meanings (in accordance with the number of public employers), the statute may be rendered unconstitutionally vague in that veterans seeking to capitalize on the statutorily-granted preference must necessarily guess at the meaning of the phrase "requisite qualifications." Under the majority's analysis, the grant or denial of the preference, a constitutionally protected property right, is made without regard to the protections against the arbitrary exercise of governmental power afforded by our basic concepts of due process.