**HOUSING AUTHORITY OF THE COUNTY OF CHESTER,**
Petitioner,

v.

**STATE CIVIL SERVICE COMMISSION,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 3, 1997.
Decided March 12, 1997.
Reargument Denied May 21, 1997.

John H. Spangler, West Chester, for Petitioner.

Frederick C. Smith, Jr., Harrisburg, for Respondent.

Before McGINLEY and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

McGINLEY, Judge.

The Housing Authority of Chester County (the HACC) appeals from an order of the State Civil Service Commission (Commission) that directed the HACC to vacate the July 3, 1995, appointment of Troy L. Chapman (Chapman) to the position of Executive Director (ED–3).

In February of 1993, Fredrick Brown, Executive Director, of the HACC, resigned. The Board of Commissioners of the HACC met with staff members of the Commission to commence testing to fill the position of ED–3. In January of 1994, the HACC requested the Commission certify a list of eligible candidates.[1] The majority of the Commissioners selected Dale Gravit (Gravit) to the position but Gravit declined. The HACC again returned the eligibility list to the Commission. In the interim, Bertha Danzler continued as Acting Executive Director.

In Spring of 1995, the HACC again requested an eligibility list from the Commission. After interviews Chapman was unanimously selected as the new ED–3. On August 11, 1995, the Commission notified the HACC that Chapman's appointment violated Section 7104(b) of the Act, commonly known as the "Veterans Preference Act", 51 Pa.C.S. § 7104(b) and the Civil Service Act (Civil Service Act), Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§ 741.1–741.1005. The HACC was requested to comply with both acts. After the HACC refused, the Commission requested a hearing.

Prior to the hearing, the parties stipulated to the following facts:

4. The position of Executive Director of HACC is a civil service merit system position.

5. The minimum experience and training requirements (hereafter "METS") necessary to qualify to test for the position of Housing Authority Executive Director 3 are set forth in SCSC Examination Announcement 129–90, *Deputy Executive Director Positions in City and County Housing Authorities,* issued April 20, 1990 and are as follows:

*Executive Director 3*—One year experience as an Executive Director 2 or two years of experience an Executive Director 1; or five years of experience in a housing authority or other publicly or privately owned, government subsidized housing project which has included three years of experience supervising or managing a financial or administrative program.

6. Troy L. Chapman and John J. Fitzgerald possessed the required METS and applied for and were tested for the position of Executive Director 3, HACC.

7. Troy L. Chapman, who is not a veteran, passed the test and received a score of 82.00.

8. John J. Fitzgerald, who is a veteran, passed the test and received a score of 91.00, which included ten (10) additional bonus points added to his raw score as required by the veteran's preference provisions of the Pennsylvania Code, 51 Pa. C.S.A. §§ 7101–7109.

9. The names of Troy L. Chapman and John J. Fitzgerald, along with five other eligible candidates, appeared on a certification list of candidates for the position of Executive Director 3, HACC, which was issued to HACC by SCSC on April 13, 1995.

---

**1.** After the first request, the HACC was unable to reach a majority decision on a candidate and the eligibility list was returned to the Commission.

10. The candidates on the list were surveyed by HACC to determine their availability for appointment to the position. Both Mr. Chapman and Mr. Fitzgerald responded that they were available and each was interviewed for the position.

11. HACC selected Troy L. Chapman and he was appointed to the position as Executive Director 3 on July 3, 1995.

Stipulations, December 7, 1995, at 2–4; Reproduced Record (R.R.) at 20a–22a.

Stephen Startle (Startle), Chief of Division of Technical Assistance for the Commission, testified that the "bureau is responsible for interpreting the Civil Service Act and rules, writing the Management Directives, providing technical assistance to agencies and ... auditing personnel transactions to ensure compliance with the regulations." Notes of Testimony (N.T.), December 7, 1995, at 25; R.R. at 78a. Startle testified that pursuant to the Commission's Management Directive if "there is a veteran within the Rule–of–Three ... [t]hey have preference and employment over non-veterans ... [and that] the only appointment that could have been made was J.J. Fitzgerald, if an appointment was going to be made." N.T. at 42; R.R. at 95a.

Joseph W. Shepard, Personnel Analyst 3, testified that he met with the HACC and "reviewed with them the Rule–of–Three and veterans' preference" and that "I also indicated to them that if they had any questions concerning any facet of the certification/appointment process to call me." N.T. at 63; R.R. at 116a.

Andrew E. Dinniman (Dinniman), a County Commissioner for Chester, testified that he previously served as a HACC Commissioner when the HACC sought to fill the position of ED–3. He stated "during his interview [Chapman] showed great knowledge and skill in that area solving low income housing through public/private cooperation" and that "I did not sense that knowledge in Mr. Fitzgerald's answers to the question." N.T. at 76; R.R. at 129a.

Albert W. Eastburn (Eastburn), also County Commissioner for Chester, testified that the HACC sought a candidate with "technical know-how, who understood how a housing authority operates, what its objectives are, how they should be carried out, what their relationship is with HUD, and, particularly, the leadership ability that's essential to make any organization function." N.T. at 90; R.R. at 143a. Eastburn stated that Chapman "demonstrated clearly an ability that Mr. Fitzgerald did not demonstrate."[2] N.T. at 92; R.R. at 145a.

Juan R. Sanchez (Sanchez), HACC Commissioner, testified that the board members established the necessary criteria for the position and prepared a list of questions for the interview. Sanchez believed that Fitzgerald failed to meet the requirements of the position.

Sandra F. Simmons (Simmons), EEO Manager for the Department of Veterans Affairs and HACC Commissioner, testified that civil service qualifications were not enough because "[w]e had someone who had all those things [qualifications], but yet we had an agency that was a troubled agency...." N.T. at 190; R.R. at 243a. Simmons stated that she helped formulate the qualifications "to get the very best candidate." N.T. at 187; R.R. at 240a.

Finally, Chapman testified that he possessed extensive work experience in public housing. Prior to his present position he explained his job duties as "executive director of the Montgomery County, Maryland Housing Authority ... executive director of the Wilmington, Delaware Housing Authority, the Wilmington, Delaware Redevelopment Authority and the Wilmington, Delaware Poverty Agency." N.T. 208; R.R. at 261a.

The Commission directed the HACC to vacate Chapman's appointment and offer the position to Fitzgerald. The Commission concluded that the "Housing Authority violated the Veterans' Preference Act, 51 Pa.C.S. § 7104(b) and the State Civil Service Commission's Management Directive 580.20."

---

**2.** George Hemcher (Hemcher), Chairman of the County Commissioners of Chester County, testimony corroborated the testimony of Dinniman and Eastburn that Chapman was the most qualified candidate. *See* N.T. at 117–21; R.R. at 170a–74a.

The Commission's Adjudication, May 17, 1996, at 13.

On appeal the HACC contends: 1) the Commission lacked jurisdiction to direct the HACC to offer the position to a veteran; 2) the Commission erred by concluding that Section 7104(b) of the Veterans' Preference Act mandates that a veteran with minimum training and experience qualifications be hired; and 3) the Commission erred by precluding the HACC from introducing evidence regarding the civil service system and the process employed by the Authority.[3]

■ Initially the HACC contends that the Commission lacked the authority to enforce the provisions of the Veterans' Preference Act. The HACC asserts that the Commission's authority set forth in Management Directive 580.21 does not have the force of law because it was implemented without any statutory authority.

Section 951(d) of the Civil Service Act, 71 P.S. § 741.951(d)[4] provides:

Notwithstanding any other provisions of this section, the *commission may, upon its own motion, investigate any personnel action taken pursuant to this act* and, in its discretion, hold public hearings, record its findings and conclusions, and make such orders as it deems appropriate to assure observance of the provisions of this act and the rules and regulations thereunder. (emphasis added).

Section 203(3) of the Civil Service Act, 71 P.S. § 741.203(3) provides that "[i]t shall be the duty of the commission as a body . . . [t]o investigate on its own motion . . . any matter touching the enforcement and effect of the provisions of this act and to require observance of the provisions of this act and the rules and regulations thereunder."

In the present controversy, there is no dispute that the position of ED–3 is a civil service position. The parties also stipulated to the minimum experience and training requirements necessary for the position of ED–3 and that Chapman and Fitzgerald met those necessary minimum qualifications. Finally, the Civil Service Act authorizes the Commission to initiate its own investigation even where a complaint has not been filed and to intervene in matters such as the one sub judice. The HACC's assertion that the Commission lacks authority is unfounded.

■ The HACC next contends that Section 7104(b) of the Veterans' Preference Act does not mandate that a veteran be hired over a non-veteran in a civil service employment situation.

Section 7104(b) of the Veterans' Preference Act provides:

**Name on a civil service list**—Whenever any soldier possesses the requisite qualifications, and his name appears on any eligible or promotional list, certified or furnished as the result of any such civil service examination, the appointing or promoting power in making an appointment or promotion to a public position shall give preference to such soldier, not withstanding, that his name does not stand highest on the eligible or promotional list.

Management Directive 580.21 provides that "Veterans' preference applies to appointments only as follows . . . (1)[r]eceive 10 additional points on their final earned ratings . . . (2)[h]ave mandatory appointment preference over any nonveterans when their names appear together within the Rule–of–Three on employment certifications. . . ."

In *Brickhouse v. Spring–Ford Area School District*, 540 Pa. 176, 656 A.2d 483 (1995)[5]

---

**3.** Our scope of review in civil service cases is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or whether necessary findings of fact are supported by substantial evidence. *Department of Health v. Nwogwugwu*, 141 Pa.Cmwlth. 33, 594 A.2d 847 (1991).

**4.** Section 951 was added by the Act of August 27, 1963, P.L. 1257.

**5.** In *Brickhouse* G. Gordon Brickhouse (Brickhouse) applied for a secondary social studies teaching position. Brickhouse, a Vietnam veteran, had one year's experience teaching social studies with other experience as a paralegal, bookkeeper, manager of a trailer park, manager of a hunting lodge and teacher in reform and other special schools. The Spring–Ford Area School District hired Andrew Ruppert, a non-veteran, who possessed excellent academic cre-

our Pennsylvania Supreme Court rejected a veteran's argument that the Veterans' Preference Act required that the veteran be hired if the other applicants are nonveterans when the veteran is qualified.[6] The Supreme Court stated:

It is clear, thus that there must be a reasonable relation between the basis of the preference (being a veteran) and the object to be obtained (preferring veterans to properly perform public duties). In other words, veterans are not to be preferred in the assignment of public jobs merely on the strength of being veterans. They must be, in some sense, 'qualified.'

[Commonwealth ex rel. Graham v.] Schmid [, 333 Pa. 568, 3 A.2d 701 (1938)] also aids in defining the meaning of 'qualified.' Veterans who seek to take advantage of the act must be able to accomplish 'proper performance of public duties.' That is, a veteran seeking to take advantage of the preference mandated by the act must be able to demonstrate his ability to perform the job at the level of skill and with the expertise demanded by the employer. Such a demonstration would establish that he will be able to 'properly perform' the duties.

Since the applicant must demonstrate his ability to perform, merely having the appropriate certification or licensure, without more, would not serve to qualify an applicant for the job. Thus, Brickhouse's assertion of qualification based on minimal age, good moral character and certification to teach, must fail. These features may establish a veteran's eligibility to be considered for the position, but they will not establish that he is 'qualified' for the job. Were ability to perform at the level of the expertise demanded by the employer not required, not only would public policy mentioned in Schmid be violated, but the likeli-

hood of absurd results, forbidden by the Statutory Construction Act, 1 Pa.C.S. § 1922(1), would be present in hundreds if not thousands of hirings.

. . . .

We are mindful that a public employer might be able to formulate qualifications for a job in such a way as to defeat the veterans' preference required by the act. When such formulations are undertaken in bad faith without regard to legitimate need, they must fail, but determination of the legitimacy of the employer's formulation of hiring criteria can be done only on a case by case basis.

If it is required, as a matter of public policy, as we have held, that a person who is preferred under the Veterans' Preference Act must be able to demonstrate his ability to perform the job in question at the level of expertise demanded by the employer, then the employer must be free to set the hiring requirements of that job as they reasonably relate to the duties to be performed in order to ensure that the person hired will be competent.

Id. at 182–83 656 A.2d at 486–87.

A civil service examination was not involved in *Brickhouse*. *Brickhouse* addressed Section 7104(a) of the Act and whether a soldier eligible for "appointment" must receive veterans' preference where no civil service test is required. Because a soldier can also be appointed under Section 7104(b), it would be inconsistent if we failed to apply the rationale of *Brickhouse* to civil service appointments under Section 7104(b) of the Veterans' Preference Act.[7]

In the present controversy, the record is replete with testimony the HACC had experienced serious problems with its public housing. Drug trafficking and shootings were common events and the housing was

---

dentials and favorable evaluations as a long-term substitute teacher.

**6.** Brickhouse asserted that an applicant was qualified to teach in Pennsylvania if the applicant was of sound moral character, over eighteen years of age and certified to teach in Pennsylvania.

**7.** We believe this position is buttressed by our Pennsylvania Supreme Court's recent decision in

*Hoffman v. Township of Whitehall*, 544 Pa. 499, 677 A.2d 1200 (1996). In *Hoffman* the Supreme Court determined that "section 7103(a) [additional points in grading civil service examinations] and 7104(b) are, in the context of veterans seeking *promotion* in public employment, unconstitutional." (emphasis added). *Id.* at 505–06, 677 A.2d at 1203.

being damaged. The HACC was looking for a candidate with extensive public housing management experience, someone "familiar with HUD and the mechanics of HUD." N.T. at 118; R.R. at 171a. Finally, the HACC's Commissioners and the County Commissioners expressed a belief that Chapman was a better candidate than Fitzgerald for the position.[8] The evidence established that it was not the intent of the HACC to defeat the veterans' preference but to hire the most competent applicant. *See Dickey v. Board of Commissioners of the City of Washington and the County of Washington,* 658 A.2d 876 (Pa.Cmwlth.1995).

Accordingly, we reverse the decision of the Commission.[9]

### ORDER

AND NOW, this 12th day of March, 1997, the order of the State Civil Service Commission, dated May 17, 1996, at Appeal No. 18970, is reversed.

---

8. Mr. Spangler to Hemcher:
   Q: And why did you make the decision that you did not want to hire Mr. Fitzgerald?
   A: Mr. Fitzgerald didn't come across well at the interview.
   And, also, Mr. Fitzgerald's resume ... was not in areas of HUD, for example ... he was not familiar with any of the areas of PPHMAP [Physical Public Housing Management Assessment Program]. He was not familiar with other general areas of HUD regulations and stated that he wasn't, but would be willing to learn.
   . . . .
   Q: How about Mr. Chapman, did you make the same value judgments with regard to him and what was the result?
   A: Yes. Mr. Chapman was very familiar with HUD ... regulations.
   Mr. Chapman had very good social skills, as far as organizing tenants, people, working with communities and with fundraising, just all the areas that we needed someone with skill in. Mr. Chapman also has been published in various housing journals. So, Mr. Chapman's housing background and how housing relates to a housing authority, was very much on target with what we were looking for.
   N.T. at 117–20; R.R. at 170a–73a.

9. Because of our resolution of the Veterans' Preference issue, this Court need not address the merits of the HACC's remaining issue.