Ody A. DICKEY, Jr., Appellant

v.

**BOARD OF COMMISSIONERS OF the CITY OF WASHINGTON, Pennsylvania, and the County of Washington.**

Commonwealth Court of Pennsylvania.

Argued March 13, 1995.
Decided May 9, 1995.

Samuel J. Cordes, for appellant.

Janette Baisley, for appellees.

Before McGINLEY and KELLEY, JJ., and SILVESTRI, Senior Judge.

McGINLEY, Judge.

Ody Dickey, Jr. (Dickey) appeals an order of the Court of Common Pleas of Washington County (common pleas court) after determining upon remand[1] that Dickey lacks the "requisite qualifications" for the 911 Coordinator position and therefore is not entitled to be hired under Section 7104(a) of the Act commonly known as the "Veterans Preference Act" (Act).[2]

The facts as recounted in this Court's memorandum opinion of *Dickey v. Board of Commissioners of the County of Washington and the County of Washington,* 164 Pa.Commonwealth Ct. 699, 643 A.2d 1191 (1994), are as follows. In February of 1992 the County of Washington (County) advertised for appli-

---

not indicate that Ciancla's loss of SSI was attributable to any such COLA increase.

1. On April 6, 1994, this Court vacated the order of the common pleas court and remanded the matter for a determination as to whether Dickey had the "requisite qualifications" for the 911 Coordinator position.

2. 51 Pa.C.S. § 7104(a).

cants for a position as Coordinator of its new 911 emergency response system. The newspaper advertisement read:

COORDINATOR FOR 911

PUBLIC SAFETY PROFESSIONAL to direct planning, implementation & management of county-wide enhanced 911 system. Coordinator for 911 serves as liaison to Washington County 911 Planning Committee & County Commissioners. Successful applicant will have some knowledge of 911, good communication skills, be computer intelligent, have management experience, a public safety background, & a 4–year degree in a related field. Salary negotiable.

Send cover letter describing qualifications & resume to interim 911 Coordinator, Room 202, Courthouse Square Building, 100 W. Beau St., Washington, PA 15301. Applications accepted until March 6, 1992. E.O.E.

Notes of Testimony, March 9, 1993, (N.T.), Exhibit 1.

The County's Director of Employee Relations, Katherine B. Emery (Emery) and Francis Pettit (Pettit), a member of the search committee, developed a job description for the Coordinator position which required, *inter alia*, the following:

Thorough knowledge of Act 78 of 1990 which is designed to provide a no-charge telephone number 911 for individuals to gain rapid direct access to emergency aid.

Thorough knowledge of all other applicable regulations and laws.

Thorough knowledge of the operations of a 911 system and current usage in the County for an emergency number.

Ability to analyze, evaluate and plan to meet the legal requirements of a 911 system.

Ability to establish and foster positive working relationships with state and municipal officials, volunteers, business persons and the general public.

Ability to prepare fiscal and administrative reports.

Ability to plan, organize and direct the work of others individually and as groups.

Ability to effectively express ideas in writing and orally.

N.T. at 57a, Respondent's Exhibit A at 1–2.

Emery assisted the search committee with the interviewing. Fifty applications were received and five were selected for interviews. Dickey's name was subsequently added to the list as a favor to a County Commissioner. Relying upon the advice of the search committee, the Washington County Board of Commissioners (Board) hired Brian Bark (Bark), a non-veteran. Dickey, a veteran who served 21 years in the Air Force, appealed, alleging that he possessed the "requisite qualifications" and that he was entitled to be hired. On remand the common pleas court found that "[r]equisites three and four of the job description direct that the applicant have a thorough knowledge of the operation of a '911 system and current usage in the County for an emergency number' and the ability 'to analyze, evaluate and plan to meet the legal requirements of a 911 system.'" Opinion of the Common Pleas Court, August 7, 1994, at 4. The common pleas court found:

Without a doubt Dickey has no thorough knowledge of the operation of a 911 system and its current usage in the County and also he lacks the ability to analyze, evaluate and plan to meet the legal requirements of the system.

In effect, talking to people in the Columbus, Ohio, system and touring a 911 system in Greensburg, and reading about the system are hardly the kinds of knowledge which would meet the standards of 'requisite qualifications' under parts three and four of the job description.

Opinion at 5.

On appeal Dickey contends: 1) that the Board imposed overly strict requirements upon a veteran so that Dickey was unable to meet the "requisite qualifications" under Section 7104(a) in violation of the Act and this Court's decision in *Brickhouse v. Spring Ford Area School District*, 155 Pa.Commonwealth Ct. 402, 625 A.2d 711 (1993); 2) that the common pleas court failed to take into consideration Dickey's experience with similar 911 systems while in the Air Force; 3)

that the common pleas court's determination that Dickey lacked experience for 911 Coordinator position was in contravention of Section 7105 of the Act; and (4) that Dickey was evaluated under different standards than Bark.

■ Our scope of review in local agency appeals where the common pleas court takes *de novo* evidence is limited to determining whether constitutional rights were violated or whether the common pleas court manifestly abused its discretion or committed an error of law. *McLaughlin v. Centre County Housing Authority,* 151 Pa.Commonwealth Ct. 292, 616 A.2d 1073 (1992).

■ Initially, Dickey contends that the County's job description imposed overly strict requirements as "requisite qualifications" for the 911 Coordinator position in violation of Section 7104(a) of the Act and *Brickhouse.* Dickey asserts that he satisfied the reasonable requirements for the position of the 911 Coordinator as advertised by the County in the newspaper and therefore met the "requisite qualifications" under the Act.

Section 7104(a) provides:

(a) **Non-civil service.**—Whenever any soldier possesses the requisite qualifications and is eligible to appointment to or promotion in a public position, where no such civil service examination is required, the appointing power in making an appointment or promotion to a public position shall give preference to such soldier.

Recently, our Pennsylvania Supreme Court reviewed this Court's decision in *Brickhouse* and reversed. *Brickhouse v. Spring–Ford Area School District,* —— Pa. ——, 656 A.2d 483 (1994). In *Brickhouse,* G. Gordon Brickhouse (Brickhouse) applied for a secondary social studies teaching position. Brickhouse, a Vietnam veteran, had one year's experience teaching social studies with other experience as a paralegal, bookkeeper, manager of a trailer park, manager of a hunting lodge and teacher in reform and other special schools. The Spring–Ford Area School District hired Andrew Ruppert (Ruppert), a non-veteran, who possessed excellent academic credentials (3.78 grade point

average)[3] and favorable evaluations as a long-term substitute teacher.

On appeal the Supreme Court framed the issue presented as whether a veteran, certified to teach in Pennsylvania, must be hired pursuant to the Act when the other applicants are non-veterans. The Supreme Court stated:

It is clear, thus that there must be a reasonable relation between the basis of the preference (being a veteran) and the object to be obtained (preferring veterans to properly perform public duties). In other words, veterans are not to be preferred in the assignment of public jobs merely on the strength of being veterans. They must be, in some sense, 'qualified.'

[*Commonwealth ex rel. Graham v.*] *Schmid* [,333 Pa. 568, 3 A.2d 701 (1938)] also aids in defining the meaning of 'qualified.' Veterans who seek to take advantage of the act must be able to accomplish 'proper performance of public duties.' That is, a veteran seeking to take advantage of the preference mandated by the act must be able to demonstrate his ability to perform the job at the level of skill and with the expertise demanded by the employer. Such a demonstration would establish that he will be able to 'properly perform' the job duties.

Since the applicant must demonstrate his ability to perform, merely having the appropriate certification or licensure, without more, would not serve to qualify an applicant for the job. Thus, Brickhouse's assertion of qualification based on minimal age, good moral character, and certification to teach, must fail. These features may establish a veteran's eligibility to be considered for the position, but they will not establish that he is 'qualified' for the job.

Were ability to perform at the level of the expertise demanded by the employer not required, not only would public policy mentioned in Schmid be violated, but the likelihood of absurd results, forbidden by the Statutory Construction Act, 1 Pa.C.S.

---

**3.** Brickhouse's overall grade point average was 2.78 during his final two years of college.

§ 1922(1), would be present in hundreds if not thousands of hirings.

. . . .

We are mindful that a public employer might be able to formulate qualifications for a job in such a way as to defeat the veterans' preference required by the act. When such formulations are undertaken in bad faith without regard to legitimate need, they must fail, but determination of the legitimacy of the employer's formulation of hiring criteria can be done only on a case by case basis.

If it is required as a matter of public policy, as we have held, that a person who is preferred under the Veterans' Preference Act must be able to demonstrate his ability to perform the job in question at the level of expertise demanded by the employer, *then the employer must be free to set the hiring requirements of that job as they reasonably relate to the duties to be performed in order to ensure that the person hired will be competent.* (emphasis added).

*Id.,* ――――, 656 A.2d at 486–87.

■ In the present controversy, the Committee and Emery, the County's personnel director, formulated the qualifications for the 911 Coordinator position. It is clear from the record that the "requisite qualifications" listed in the job description required that the candidate possess more expertise and skill than originally advertised by the County. However, pursuant to *Brickhouse* the employer is free to establish hiring requirements that are reasonably related to the duties to be performed so long as such requirements are not undertaken in bad faith.

Emery testified that the County was seeking to hire a candidate who possessed technical or actual experience with 911 equipment, a knowledge of Act 78 and the ability to enhance the 911 system.[4] Emery stated that these "requisite qualifications" in the job description were formulated prior to the interview process and that each applicant was judged based upon whether they met those qualifications. The evidence established that it was not the intent of the County when it established the "requisite qualifications" in the job description to defeat the veteran's preference but to hire the most competent applicant. *Brickhouse.*

■ Dickey next contends that he possessed the "requisite qualifications" and that the common pleas court erred as a matter of law when it failed to credit his military experience with similar 911 systems. Dickey asserts the evidence establishes that he possessed "some knowledge" of the civilian 911 system and that he had extensive management and leadership experience and the ability to communicate his ideas to a diverse group of people.

Dickey testified that he was Deputy Director of the Base Disaster and Control Emergency Program in the Air Force which he stated is the military equivalent to the civilian 911 system. Dickey also testified that he was familiar with the civilian 911 system and that the military and civilian systems were "essentially the same." N.T. at 20; R.R. at 21a. When queried as to how the technology was the same, Dickey responded that the difference between the civilian and military technologies was like driving a 1962 automobile compared to driving a 1993 model.[5] Bark testified that he was

4. David A. Miller, County's attorney, to Emery:
Q: What were the areas to be covered?
A: We divided it into three broad categories, and I will say, sort of in the area of importance; (1) technical experience, or experience with 911, with all the equipment and with Act 78, and what is required to go from a regular 911 to an enhanced 911 system; (2) would be to explore the abilities and expertise of the candidate *on speaking in public,* and to gather or garner support for the system with the community. We thought that the key element of the job was selling this concept to the community, and to ascertain their ability in that area. The third area would be more procedural part

of their abilities to administer and manage people, because as the system developed, they will be a Department Head and have supervisory responsibilities with other managers in the office.
N.T. at 66–67; R.R. at 67a–68a.

5. Andrew G. Sykes, Dickey's attorney, to Dickey:

Q: When you say the technology is the same, be more specific and tell us how and in what we [sic] are the same?
A: Well, I would categorize using an analogy that the communications or—let me put it this way: if you had an automobile that you were

involved with the 911 system and that he had experience in implementing and managing an enhanced 911 system.[6] The evidence established that the common pleas court did consider Dickey's prior military experience but found that, even with his military experience, Dickey failed to meet the "requisite qualifications" of the 911 Coordinator position.

Dickey also contends that pursuant to Section 7105 of the Act, 51 Pa.C.S. § 7105 a lack of experience does not disqualify a veteran and cannot be considered as a "requisite qualification."

Section 7105 of the Act provides:

> The lack of academic or scholastic training or experience, age, loss of limb or other physical impairment which does not in fact incapacitate any such soldier shall not be deemed to disqualify him, provided he possesses the other requisite qualifications to satisfactorily perform all of the duties which the position requires.

51 Pa.C.S. § 7105. In *Brickhouse* the Pennsylvania Supreme Court rejected a similar argument and stated that "[c]ontrary to Commonwealth Court[7], ... we do not perceive that a different result is required by § 7105 of the Veteran's Preference Act. Brickhouse does not 'lack' academic training ... [h]e is disqualified because he does not possess 'the other requisite qualifications to satisfactorily perform all of the duties which

the position requires.'" *Brickhouse,* —— Pa. at —— – —— n. 4, 656 A.2d at 488 n. 4.

Lastly, Dickey asserts that the County considered him qualified for the 911 Coordinator position based upon the letter sent from Pettit to him[8] but contends that the County did not hire him because at the interview he appeared "very stilted and did not exude any warmth." N.T. at 72; R.R. at 73a. This argument is without merit. First, the letter sent to Dickey also stated that the three candidates chosen for the next step "came closest to meeting all of our requirements." Also, Emery testified that the letter sent to Dickey was a form letter and that it was sent to three of the six candidates not considered for further interviews. *See* N.T. at 74; R.R. at 75a. Second, although Emery did make these remarks, her observations were relevant because the position required a person to be a salesman. Emery's testimony clearly established that based upon his interview Dickey "would not make a good salesperson ..." as the 911 Coordinator to the sixty-seven local municipalities and political sub-divisions in the county. N.T. at 72; R.R. at 73a.

Accordingly, we affirm the decision of the common pleas court.

## ORDER

AND NOW, to wit, this 9th day of May, 1995, the order of the Court of Common

---

> driving today, a 1962 automobile, and you went out this afternoon and stepped into a 1993 automobile, the displays, the power steering, the power brakes, and so on and so forth, may be all different as to what you were used [sic] to driving in the 1962 model, but you could still drive the vehicle.
> N.T. at 20; R.R. at 21a.

6. Mr. Miller to Bark:

> Q: Had you had any experience on the date you were interviewed by the Search Committee in planning a 911 system?
> A: Yes, I was involved in the team approach in the development of going from a basic 911 system, as we talked about earlier, to an enhanced 911 system. So, there was a great deal of planning involved there.
> Q: Did you have any experience in implementing the 911 system?
> A: Again, going from a basic to implementing an enhanced 911 system, yes.

> Q: Finally, there is mention of managing an enhanced 911 system; on the day that you were interviewed by the Search Committee, did you have experience in managing an enhanced 911 system?
> A: Yes, overseeing the day-to-day operations certainly does follow [sic] under that.
> N.T. at 107; R.R. at 108a.

7. This Court stated that "[i]n addition, Section 7105 of the Act, 51 Pa.C.S. § 7105, although not cited by either side appears to prohibit the imposition of overly strict standards for qualification...." *Brickhouse,* 155 Pa.Commonwealth Ct. at 415 n. 10, 625 A.2d at 717 n. 10.

8. The letter stated in part that "[t]here is always the possibility that the new Coordinator will not be chosen from the three selected for various reasons ... [i]f this is the case, there is always the chance you would hear from us again...." Letter of March 30, 1992; R.R. at 125a.

Pleas of Washington County at No. 92–4177, dated August 7, 1994, is affirmed.