510 A.2d 1267

Northeastern Educational Intermediate Unit No. 19, Appellant *v.* Donald K. Stephens, Appellee.

Argued November 14, 1985, before Judges MAC-PHAIL and DOYLE, and Senior Judge BARBIERI, sitting as a panel of three. Reargued February 5, 1986, before President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, DOYLE, BARRY, COLINS and PALLADINO.

*James A. Kelly,* for appellant.

*Michael Brodie, Freedman and Lorry, P.C.,* for appellee.

*Lynne L. Wilson,* for amicus curiae, Pennsylvania State Education Association.

*Louis B. Kushner,* with him, *Ronald G. Backer,* for amicus curiae, Pennsylvania Federation of Teachers.

*John J. Dunn, Sr., Dunn & Byrne,* for amicus curiae, The American Legion, Department of Pennsylvania.

*Oliver N. Hormell,* Judge Advocate, for amicus curiae, Department of Pennsylvania, Veterans of Foreign Wars.

OPINION BY JUDGE DOYLE, June 12, 1986:

This is an appeal by the Northeastern Educational Intermediate Unit No. 19 (NEIU) from an order of the Court of Common Pleas of Lackawanna County reversing the decision of the Board of Directors (Board) of

NEIU and directing that Donald K. Stephens (Appellee), a veteran of the Korean conflict, be reinstated to his teaching position without diminution of his seniority rights and with full backpay. The relevant facts are not in dispute. Appellee began his employment with NEIU as a shop instructor on January 2, 1974. Ten years later it became apparent that NEIU would have to furlough a shop instructor. At the time of the furlough two shop instructors were employed, Appellee and Joseph Kasztejna. Kasztejna had begun teaching on September 4, 1973 (approximately four months before Appellee) and hence NEIU, recognizing that Section 1125.1 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* (School Code) 24 P.S. §11-1125.1,[1] mandated furlough in inverse order of seniority, furloughed Appellee. Appellee appealed his furlough to the Board maintaining that in computing his seniority for furlough purposes the Board should have taken into account the time he served in the armed forces, *i.e.,* September 5, 1950 through April 25, 1952. Appellee, in support of his argument, relied upon Section 7107 of what is commonly referred to as the Veterans' Preference Act (Act), 51 Pa. C. S. §7107.[2] Section 7107 of the Act provides as follows:

Whenever a reduction in force is necessary in any public position, or on public works of the Commonwealth and its political subdivisions,

---

[1] Section 1125.1 was added by Section 3 of the Act of November 20, 1979, P.L. 465.

[2] Pennsylvania has had a long tradition of giving preference to veterans of the military service. Prior to World War I, Section 1 of the Act of May 19, 1887, P.L. 132, provided that Civil War veterans who possessed the requisite qualifications were to be preferred in public positions throughout the state. The present Veterans' Preference Act was enacted on August 1, 1975, effective January 1, 1976.

and personnel are discharged according to seniority, the number of years of service of any soldier shall be determined by adding his total years of service in the civil service or on public works to his total years of service as a member of the armed forces of the United States, or in any women's organization officially connected therewith during any war in which the United States engaged.

There is no dispute that if Appellee's period of military service is counted he is the more senior of the two shop teachers and, hence, is not the proper furloughee. The question thus presented for our determination is whether Section 7107 is applicable to a public school teacher who is furloughed pursuant to Section 1125.1 of the School Code. Section 1125.1 provides in pertinent part:

Professional employes shall be suspended . . . in inverse order of seniority within the school entity of current employment.

A cross reference in Section 1125.1 to Section 1124, 24 P.S. 11-1124, wherein reasons for suspension are set forth, makes it clear that "suspension" as that term is used in Section 1125.1 refers to a reduction in professional staff because of such factors as a decline in pupil enrollment, curtailment of educational programs, consolidation of schools, or establishment of new school districts because of a reorganization. Thus, the term "suspension" in this context does not carry with it the connotation of a suspension for cause, but rather is a personnel action taken because of a lack of or a redistribution of work.

It is clear that Section 1125.1 governs the furlough of public school teachers, but conspicuous by its absence from this Section is a definition of "seniority" and this term is also not defined elsewhere in the School Code. Thus, the mechanics of how seniority is to be

computed remains an open question and it is perfectly reasonable to read Section 7107 as supplementing Section 1125.1 of the School Code by defining seniority with respect to veterans who are also public school teachers. We therefore must reject the argument of the Pennsylvania State Education Association[3] that Section 7107 of the Act and Section 1125.1 of the School Code are irreconcilable.

The Pennsylvania State Education Association has also argued that because other Sections of the School Code, particularly Section 1176, 24 P.S. §11-1176, and Section 1178, 24 P.S. §11-1178, provide that any teacher inducted into the armed services during a time of war or national emergency will continue to accrue seniority, the legislature has already taken into account the possibility of military service and has by its silence on the issue of the applicability of the Act to furlough situations indicated an intent that it not apply. We disagree. The above mentioned Sections of the School Code relate to persons who are employed as teachers prior to their military service. There is nothing to suggest that because the legislature wished to protect the seniority of these individuals, it did not also wish to benefit persons who first served their country and then entered the teaching profession. The nature of the Veterans' Preference Act is such that it is meant to be applied to other existing substantive legislation and while it would certainly have been preferable, and a great deal more enlightening, had the legislature specifically referenced the Act when adding Section 1125.1 to the School Code, as it did, for example, in the Act of October 7,

---

[3] The Pennsylvania State Education Association has submitted an amicus curiae brief in support of NEIU. Other amici briefs arguing in support of Appellee's position have been submitted by the Pennsylvania Veterans of Foreign Wars, The American Legion, and the Pennsylvania Federation of Teachers.

1974, P.L. 226, which amended the Civil Service Act,[4] we do not believe that it is appropriate to conclude that a failure to do so means that the legislature intended that the Act not apply to the School Code. In fact, to hold that it did so intend would serve to establish a dual system of seniority with regard to military service time, differentiating between those who accrued such time before being hired and those who accrued it after becoming employed.

Having determined that the legislature has not precluded the application of the Act to the School Code, we next consider whether Appellee, himself, meets the criteria enunciated in Section 7107. Several arguments are advanced as to why he is not within the class the legislature sought to protect when it enacted Section 7107. We shall consider them *seriatim.*

First, NEIU argues that Appellee is not employed in a "public position," a requirement under Section 7107. The trial court determined that Appellee *was* so employed and in doing so relied upon the stipulated facts that employees of NEIU are governed by the Public School Code and the Public Employe Relations Act, Act of July 23, 1970, P.L. 563 *as amended,* 43 P.S. §§1101.101-1101.2301. While we do not disagree with the trial court's conclusion, we do not deem it necessary to rely solely upon the inter-relation between the School Code and the Public Employe Relations Act. The fact that Appellee is employed as a *public* school teacher is, itself, sufficient to establish the public nature of his position.

Next, NEIU contends that Appellee was not "discharged," the term employed in Section 7107, but rather was "suspended," the term employed by Section

---

[4] Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§741.1-741.1005.

1125.1 of the School Code. As we noted earlier, the term suspended as used in the School Code refers, in fact, to what is more commonly known as a furlough. And Section 7107, while it uses the term "discharge," qualifies it as being a discharge implemented because a reduction in force is necessary. Thus, as with the word "suspension" in Section 1125.1 of the School Code, the word "discharge" in Section 7107 of the Act does not refer to a discharge for cause, but for other factors, such as, for example, a lack of work or a lack of funds. These are the classic reasons for implementation of a furlough. *See* Section 3(t) of the Civil Service Act, 71 P.S. 741.3(t). It being clear that Section 7107 of the Act and Section 1125.1 of the School Code both pertain to a furlough situation, we are led to conclude that we should not allow the employment of different terminology to dictate a result contrary to that which the legislature clearly intended. Succinctly stated, it is the *nature* of the personnel action that must control and not *its* label.

NEIU next asserts that because Section 7107 requires that a veteran's military service be added to his "total years of service in the civil service or on public works" it cannot apply here inasmuch as Appellee is not employed in either a civil service position or on public works. It is our view, however, that NEIU reads the term "civil service" too literally. While it is certainly true that that term applies to employees in the classified service, we believe it also has a more general connotation of public employment in an area concerned with governmental functions. The term "civil service" as defined in The Random House Dictionary of the English Language 246 (College ed. 1969) discloses that the term civil service, meaning classified service, is listed as the third meaning, whereas the first meaning given is "those branches of public service concerned with all governmental functions outside the armed services."

There can be no dispute that it is a function of the government to provide education for the citizens of this Commonwealth. Article III Section 14 of the Pennsylvania Constitution, Pa. Const. art. III, §14, provides:

> The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth.

Additionally, the School Code itself is state law and teachers are certified through the state's Department of Education. Thus, under the most common usage of the term, Appellee *is* a civil servant.

As its final statutory argument, NEIU contends that under Section 1125.1(a) seniority is limited to that accrued "within the school entity of current employment." We do not read this language as prohibiting the use of military service in computing seniority. Rather, we believe that these words are meant only to preclude teaching time *in other school districts* from being used in the computation of seniority within the present school district.

Having resolved the statutory arguments advanced by NEIU, we now move to a consideration of whether the Act is unconstitutional as applied in this situation. We start by recognizing that an act of the legislature is presumed to be constitutional, *Snider v. Thornburgh*, 496 Pa. 159, 436 A.2d 593 (1981), and note, as did the trial court, that NEIU does not allege what particular constitutional provision has been violated. NEIU relies, however, upon the case of *Commonwealth ex rel. Graham v. Schmid*, 333 Pa. 568, 3 A.2d 701 (1938).[5] In

---

[5] The *Schmid* case involved a constitutional challenge based upon Article III, Section 7 of the Pennsylvania Constitution of 1874. This Section contained a privileges and immunities clause. A 1967 amendment adopted on May 16th renumbered Article III Section 7 to Article III Section 32 of what became the 1968 Constitution and at that time the privileges and immunities language was deleted.

*Schmid* the Pennsylvania Supreme Court considered the constitutionality of a preference given to war veterans when 15 percent credit was added, *in advance* of the examination, to the scores of veterans who took a civil service test for the position of assistant building inspector in the City of Erie. The percentage was added pursuant to the preference provisions of former Section 4405 of The Third Class City Code, Act of June 23, 1931, P.L. 932.[6] Under Section 4405 fifteen percent was added to a veteran's score no matter what his initial score was. The effect was to establish a passing grade which was lower for veterans than for non-veterans. Thus, it was possible for a veteran who actually *failed* the examination and hence was unqualified, to receive, by the addition of the fifteen percent, a passing score and be hired. The *Schmid* Court first noted:

> As a basis for appointment it is not unreasonable to select war veterans from candidates for office and to give them a certain credit in recognition of the discipline, experience and service represented by their military activity. No one should deny that these advantages are conducive to the better performance of public duties, where discipline, loyalty, and public spirit are likewise essential.

*Id.* at 573, 3 A.2d at 704. The Court went on to state, however, that "where war service is appraised, in the allotment of public positions, beyond its value, and the preference goes beyond the scope of the actual advantages gained in such service, the classification becomes void and the privilege is held unreasonable and arbitrary." *Id.* at 574, 3 A.2d at 704. The Court then concluded

---

[6] Section 4405 of The Third Class City Code actually stated that the veteran's examination "shall be marked or graded fifteen percentum perfect before the quality or contents of the examination shall be considered."

that the addition of the fifteen percent onto a veteran's score, *in advance,* was an unconstitutional preference. The Court carefully pointed out however, that it would *not* be unconstitutional to add percentages onto the scores of veterans who had already passed the examination and hence had established their basic qualifications for the position. Moreover, and more directly to the point, the Court found that a *mandatory* provision for preference in favor of a veteran, if he or she was one of the first four on the civil service list, was not unconstitutional. In contrast, a preference afforded veterans did not pass constitutional scrutiny in *Commonwealth ex rel. Maurer v. O'Neill,* 368 Pa. 369, 83 A.2d 382 (1951). In *O'Neill* the City of Philadelphia had added 10 points to the *promotional* examinations of veterans. The Court recognized the holding in *Schmid* but distinguished the original appointment in that case from a promotion when it said:

> In the case of an original appointment, the training a veteran has received in the armed forces will, no doubt, make him more amenable to the following of orders, the observance of regulations and, in other ways, tend toward making him a desirable employe. But the advantages to the public of this training are not absolute and, as time passes, the proportional benefit accruing to the public from the employment in such a service of veterans in preference to non-veterans gradually diminishes as both become proficient in the performance of their duties. In determining who is to be awarded a promotion, the skill of the particular examinees in the performance of their tasks is the prime consideration and compared to it the training gained by veterans solely as a result of military service becomes of very little importance.

*Id.* at 373, 83 A.2d at 383. It is clear from *O'Neill* and *Schmid* that in cases of promotion or original appointment challenged under the privileges and immunities clause some sort of nexus between a veteran's military experience and the job to which he seeks promotion or appointment must be established for the preference to be constitutional. But we are of the view that this nexus requirement applies only when there is a change in the actual status of the veteran which enhances him to the possible detriment of the Commonwealth. Thus, in the instant case, which does not concern promotion or appointment, there is no need to inquire whether Appellee's military experience is directly related to his present teaching position for purposes of computing seniority for furlough because first, Appellee will only *maintain,* not enhance, his status and second, Appellee's competency in the position he seeks to retain has already been established so that there is no possible detriment to the Commonwealth.

Finally, NEIU cites Pennsylvania case law which examines the constitutionality of veterans' preference in the context of rational relations, the analysis normally applied to federal and state equal protection challenges which do not involve suspect classifications. *See United States Steel Corporation v. Workmen's Compensation Appeal Board (Mehalovich),* 72 Pa. Commonwealth Ct. 481, 484, 457 A.2d 155, 156-57 (1983), *citing Frontiero v. Richardson,* 411 U.S. 677 (1973). We note that in *Kroger Co. v. O'Hara Township,* 481 Pa. 101, 392 A.2d 266 (1978) the Pennsylvania Supreme Court stated that state equal protection claims require the application of the same principles as federal equal protection claims. By arguing that Pennsylvania case law dealing with equal protection issues is controlling here, NEIU has raised a state constitutional question, albeit somewhat inartfully. We thus treat the challenge as one upon

equal protection grounds. It is obvious that, by appending the veteran's time spent in the military service to his other service when computing seniority for furlough purposes, the Commonwealth is compensating the veteran for the disadvantage he would have otherwise suffered because of his exclusion from the labor market during the period of his service. This is a reasonable governmental objective which bears a rational relationship to the method employed, and hence the application of the Act to the instant situation withstands constitutional scrutiny. Based upon the foregoing discussion, we affirm the order of the trial court.

ORDER

Now, June 12, 1986, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is hereby affirmed.

Judge COLINS dissents.