## Fleming v. St. Marys City

*John Fernan,* for plaintiff.
*Thomas Wagner,* for defendant.

ROOF, *P.J.,* December 5, 1996—Presently before the court is the appeal of plaintiff Thomas G. Fleming Jr. from the decision of the defendant City of St. Marys denying his appointment as city manager.

## I. PROCEDURAL HISTORY

On January 7, 1994, Fleming filed a complaint for declaratory judgment seeking a judicial declaration that based upon his claimed entitlement to veteran's pref-

erence he be appointed St. Marys city manager effective January 3, 1994. The city filed its answer and new matter to Fleming's complaint on January 26, 1994, denying that the provisions of the Veteran's Preference Act mandated the appointment of Fleming and asserted that, as applied to the facts peculiar to this proceeding, application of the Act would be unconstitutional under the Pennsylvania Constitution as an unlawful interference with the discretion accorded the city in the appointment of a city manager. Additionally, the city submitted that Fleming never made application for appointment to the position and that his complaint was barred by laches, estoppel and waiver.

On January 28, 1994, city filed its notice directed to the office of the Pennsylvania Attorney General of its allegation that section 7104(a) of the VPA, Act of August 1, 1975, P.L. 233, no. 92, 51 Pa.C.S. §7104(a), is unconstitutional, which notice is required by Pa.R.C.P. 235.

Fleming filed his reply to the city's new matter on February 7, 1994, reasserting his claim of entitlement to the appointment based on veteran's preference. Thereafter, on March 23, 1994, Fleming filed a motion for judgment on the pleadings and the court per then President Judge Gordon J. Daghir, by memorandum opinion and order of June 22, 1994, denied the motion determining that issues of fact remained precluding judgment on the pleadings.[1]

---

1. The order of June 22, 1994, references that both Fleming and the city filed motions for judgment on the pleadings; however, a review of the record indicates such motion being filed by Fleming only. The city in its brief in opposition to Fleming's motion asked for judgment on the pleadings in its request for relief but did not file a written motion under Pa.R.C.P. 1034.

By order dated August 28, 1995, entered September 7, 1995, the court determined that the record should be supplemented by additional facts after which the court would entertain summary judgment motions. On March 20, 1996, the city filed its motion for summary judgment, and on March 22, 1996, Fleming filed his motion for summary judgment. By memorandum opinion and order dated April 30, 1996, entered May 1, 1996, the court per Senior Judge Paul B. Greiner denied Fleming's motion for summary judgment and granted the city's insofar as the court lacked jurisdiction until Fleming exhausted his administrative remedies by hearing before city council.

By letter dated May 15, 1996, entered of record July 29, 1996, Fleming requested an administrative hearing before city council. After public hearing held July 8, 1996, city council entered an adjudication consisting of findings of fact, reasons and decision denying Fleming's request. On July 29, 1996, Fleming filed his appeal to the court from said adjudication, and on August 27, 1996, the city filed its answer to the appeal.

As in his previous complaint, Fleming alleges that city council acted contrary to the provisions of the VPA in not appointing him, the only veteran applicant, to the position of city manager. In its answer, the city again denies Fleming's entitlement to veteran's preference and contends that under the particular facts of this case application of the VPA is in violation of the Pennsylvania Constitution.

On August 27, 1996, the city filed a certification of record of the adjudication issued by city council on July 8, 1996. The certification included an opinion letter of special counsel retained by city council-elect prior to its organizational meeting of January 3, 1994,

as relates to the application of the VPA to the appointment of a new city manager.[2]

Finally, in lieu of a hearing, the city and Fleming filed a stipulation on September 6, 1996, as to evidence to be accepted by the court in its determination. The items received by the court as evidence are as follows:

(a) All admitted paragraphs contained in Fleming's complaint, city's answer, Fleming's appeal and city's answer to appeal;

(b) All exhibits attached to Fleming's complaint and appeal, and Fleming's reply to new matter;[3]

(c) Certification of record filed by city; and

(d) Videotape recording of proceedings before city council on July 8, 1996.

## II. FACTUAL BACKGROUND

The facts of this case are generally undisputed and are as follows:

In November 1991, the consolidation of the Borough of St. Marys, Elk County, Pennsylvania, and the Township of Benzinger, Elk County, Pennsylvania, was approved by the voters. The Township of Benzinger and the Borough of St. Marys were formally consolidated

2. As hereinafter indicated in "factual background," the position of city manager was a new position created as a result of the consolidation of the Township of Benzinger and the Borough of St. Marys into the City of St. Marys.

3. The exhibits attached to the stated pleadings consist of a copy of advertisement for the position of city manager appearing August 31, 1993, in the St. Marys *Daily Press* and noting that the Benzinger township supervisors and St. Marys borough council were accepting resumes; honorable discharge of Fleming from U.S. Navy; Fleming's application for unemployment compensation benefits; and Fleming's resume.

into the City of St. Marys, a third-class city, on January 3, 1994. Prior to consolidation, the voters approved a Home Rule Charter for the city, codified at 324 Pa.Code §11.1-101 et seq. Some of the relevant provisions are as follows:

(1) Granting to the city all powers that a city would have under the U.S. and Pennsylvania Constitutions and laws of Pennsylvania, 324 Pa.Code §11.2-201;

(2) Providing that all powers of the city shall be vested in city council unless otherwise provided by law or the charter, 324 Pa.Code §11.2-204;

(3) Providing that the form of government shall be that of council-manager, 324 Pa.Code §11.2-205;

(4) Providing for the appointment of city manager to serve at the will of city council, 324 Pa.Code §11.6-601(a);

(5) Providing that the manager shall be qualified by reason of training or experience, to perform all duties assigned under the charter, 324 Pa.Code §11.6-601(a);[4]

(6) Recognizing the previous creation of a transition committee created by the Borough of St. Marys and the Township of Benzinger for the purpose of facilitating the transition of the individual governments to a consolidated government, 324 Pa.Code §11.23-2303;

(7) Providing that the transition committee shall have the power to prepare and recommend to council for adoption a proposed 1994 budget, an Administrative

4. The powers and duties assigned to the city manager are set forth in the charter at 324 Pa.Code §11.6-602 and include inter alia executing all laws and ordinances; appointing, suspending or removing city employees subject to certain exceptions; negotiating contracts; preparing annual budgets; recommending policy formation; supervising the administration of all city departments; and carrying out city council policies.

Code, a Civil Service Code and other ordinances that may assist in the prompt and orderly transition to a new government, 324 Pa.Code §11.23-2303.

According to a schedule accompanying the referendum to place the issue of consolidation on the ballot, a transition committee composed of two St. Marys borough council members, two Benzinger township supervisors and one citizen from each municipality was to be formed by June 1, 1992. The same schedule provided that the individual municipalities would continue to operate and be governed by their existing officers under applicable law until January 3, 1994.

The deposition of Mr. David Nedzinski, chairperson of the transition committee from January 1992 to July 1992, relates the activities of the committee relevant to the position of city manager. The committee began to operate in January 1992 and regularly conducted public meetings of which minutes were kept. According to Mr. Nedzinski, the position of city manager was "never really discussed at the transition committee meeting." See Nedzinski deposition, p. 6. To the best of Mr. Nedzinski's knowledge, Fleming recommended at the July 8, 1993, meeting that the position be advertised for candidates. *Id.* p. 7.

The transition committee, however, did not respond to the recommendation to advertise. *Id.* pp. 7-8. Further, the committee did not direct anyone to place an advertisement in the newspaper for the position of city manager and did not receive or review any applications for the position. *Id.* pp. 8-9.

According to the commentary of the Home Rule Charter, article XXIII, the only tasks assigned to the transition committee involving the city manager position included

development of a job description for the position and preparation of a list of candidates.[5]

A notice seeking applicants for the position of city manager was subsequently placed in the St. Marys *Daily Press* on August 31, 1993. See Fleming's complaint, exhibit "A."[6] The notice provided that applications were to be submitted to the Township of Benzinger and the Borough of St. Marys.[7]

At a joint meeting of St. Marys borough council and of Benzinger township supervisors held November 10, 1993, it was recorded that the manager selection committee recommended Mr. Kenneth Gabler be appointed interim city manager during the period of transition and city manager thereafter effective January 3, 1993 (sic).[8] See Nedzinski deposition, exhibit "8." At the same meeting, the joint board of lame duck supervisors and council persons ("joint board") accepted the recommendation of the manager selection committee. *Id.*

---

5. The commentary does not designate, however, how the list of candidates is to be prepared.

6. According to the findings of fact forming a part of the adjudication of the city council, the placement of notice was without authority of the transition committee.

7. These officials/municipal bodies would be the lame duck representatives of St. Marys borough council and Benzinger township supervisors whose terms would expire upon the creation of the new city government on January 3, 1994.

8. The minutes of the joint meeting of November 10, 1993 incorrectly state January 3, 1993, when intended to be January 3, 1994. It appears that the manager selection committee was a committee formed before the joint meeting. Nothing in the record before the court references the creation of a said committee except that at a Benzinger township meeting held August 23, 1993, the Benzinger township supervisors appointed two supervisors to review manager applications. See Nedzinski deposition, exhibit 4.

Thereafter, on or about December 7, 1993, Fleming first raised his veteran's preference claim. On January 3, 1994, the newly elected city council voted unanimously to appoint Mr. Gabler as city manager. City council never advertised or received applications for the position. On January 7, 1994, Fleming filed his complaint and proceedings progressed as hereinabove chronicled.

## III. SUMMARY OF FLEMING'S POSITION

Fleming submits that he applied for the position of city manager prior to January 3, 1994.[9] He further asserts that he is a "soldier" as defined in the Military Code, 51 Pa.C.S. §7101, and that pursuant to section 7104(a) of the Military Code he possesses the requisite qualifications, is eligible for appointment/promotion to the position of city manager and is to be given preference by the appointing power as he was the only veteran competing for the position. In not granting him the appointment, Fleming argues that city council ignored the mandate of the VPA.

## IV. SUMMARY OF CITY'S POSITION

The city argues that the appointment of Mr. Gabler was proper and that the VPA was not violated when Fleming was denied the position. The city advances several theories in support of its position, namely that:

(1) Section 7104(a) of the VPA is inconsistent with and violative of Article VI, Section 7 of the Pennsylvania Constitution;

(2) As applied to the position of city manager, section 7104(a) of the VPA is contrary to public policy in un-

_____

9. The record reveals that Fleming's application was submitted to the joint board.

lawfully interfering with the discretion and authority of city council;

(3) Fleming never submitted an application to city council for appointment as city manager nor did city council solicit applications;

(4) The action of the joint board in soliciting applications was not authorized by law, was not directed by the transition committee and was not directed by city council and, as such, was not binding on city council;

(5) Fleming's claim of veteran's preference was not timely and is precluded by the doctrine of laches, waiver or estoppel;

(6) Fleming is not a "soldier";

(7) Fleming does not possess the requisite qualifications;

(8) The selection of Mr. Gabler was a promotion, not an appointment, and hence, the VPA has no application.

## V. SUMMARY OF CITY'S ADJUDICATION

After public hearing held July 8, 1996, city council prepared an adjudication consisting of findings of fact, reasons and decision. The pertinent findings of fact are as follows:

(1) An advertisement for manager of the city of St. Marys was placed in several newspapers on August 31, 1993, without authorization of the transition committee.

(2) Fleming timely submitted an application.

(3) Fleming was interviewed by an ad hoc committee appointed by St. Marys borough council and Benzinger township supervisors on November 8, 1993.

(4) Mr. Gabler, the only other applicant, was similarly interviewed.

(5) During the application and interview process, Fleming did not notify any party that he was claiming a veteran's preference.

(6) On or about November 9, 1993, the interview committee recommended at a joint meeting of the St. Marys borough council and the Benzinger township supervisors that Mr. Gabler be appointed interim city manager and thereafter permanent city manager.[10]

(7) On November 9, 1993, Mr. Gabler was appointed interim city manager.[11]

(8) On or about December 7, 1993, Fleming first raised his claim to a veteran's preference.

(9) On or about December 15, 1993, city council-elect solicited and entertained an opinion from independent counsel regarding application of the VPA to the position of city manager.

(10) City council-elect never received any applications for the position of city manager.

(11) On January 3, 1994, at the organizational meeting of the St. Marys city council, Mr. Gabler was unanimously appointed permanent manager.

In its reasons for denying the appeal of Fleming, city council stated:

"At the time of its vote upon the appointment of city manager of January 3, 1994, St. Marys city council believed that it was not subject to the provisions of the Pennsylvania Veteran's Preference Act in making

---

10. While the adjudication indicates that the recommendation occurred November 9, 1993, the minutes reflect that it was November 10, 1993. (See Nedzinski deposition, exhibit 8.)

11. Again, the minutes of the joint meeting reflect that this action occurred November 10, 1993. *Id.*

the appointment. St. Marys city council had received and relied upon an opinion by independent counsel that the mandatory appointment provisions of the Veteran's Preference Act were an unconstitutional interference with the power of St. Marys city council to appoint and remove at will any person occupying the position of city manager. No reasons were given at the hearing on July 8, 1996, to justify a change in St. Marys city council's position on this issue."

It is interesting to note that city council failed to find that Fleming was not eligible for appointment, that Fleming was not a "soldier," that Fleming was not qualified or that the position of city manager was not a public office. Any one of these findings would have been a basis to justify city council's failure to accord veteran's preference. Additionally, city council did not enter a finding that the appointment was a promotion as opposed to an initial appointment. The sole reason offered in the adjudication for denying Fleming preference was its determination that the mandatory appointment provisions of the VPA were an unconstitutional interference with the powers of the St. Marys city council to appoint and remove the city manager at will.

Based upon the stated reason given by city council, the court is uncertain whether the city still contends, as it did in its pleadings and briefs, that Fleming did not meet the threshold requirements to obtain veteran's preference under sections 7101 and 7104(a), 51 Pa.C.S. This being so, the court will nevertheless undertake to address each of these issues since we find the record establishes that Fleming is a "soldier," is eligible for appointment and is qualified for appointment. Notwithstanding said determination, however, we also find that the VPA is unconstitutional as applied to the unique

facts of this case and affirm St. Marys city council's decision to deny plaintiff's appointment to the position of city manager.

## VI. ISSUES

From the procedural history, factual history and summary and positions of the parties as advanced in their pleadings and briefs, the following issues are before the court for determination:

(1) Whether Fleming's claim of veteran's preference is barred by laches, estoppel or waiver.

(2) Whether Fleming, assuming entitlement to veteran's preference, has a claim for relief against the St. Marys city council.

(3) Whether Fleming is a "soldier" as defined in 51 Pa.C.S. §7101.

(4) Whether Fleming is entitled to preference in appointment or promotion to the position of city manager pursuant to 51 Pa.C.S. §7104(a).

(a) Whether the position of city manager is a public position.

(b) Whether Fleming possesses the requisite qualifications for the position of city manager and is eligible for appointment.

(5) Whether application of section 7104(a) of the VPA is unconstitutional as applied to the selection of a city manager by the St. Marys city council.

*Issue 1*
*Laches, Estoppel and Waiver*

At paragraph 41 of its new matter, the city contends that Fleming's claim for entitlement to veteran's preference is barred by the doctrines of laches, estoppel

and waiver.[12] The city, however, has presented no legal authority supporting these defenses.

The sequence of events in the proceedings as presented to the court indicates that Fleming's claim for entitlement to veteran's preference was not untimely raised. On the contrary, Fleming first raised his claim to a veteran's preference on December 7, 1993, which was approximately 27 days after appointment of Gabler as interim city manager. Accordingly, the claim was known prior to appointment of the permanent city manager on January 3, 1994. At most, the doctrines of laches, estoppel and waiver may be applicable to the issue of whether Fleming should have been appointed interim city manager, but this legal proceeding involves the appointment of a permanent city manager, not the appointment of the interim city manager.

Additionally, Fleming's application submitted to the joint board stated that he was an "honorably discharged veteran" of the U.S. Navy. The court finds that Fleming's application should have reasonably placed the manager selection committee on notice of entitlement to veteran's preference.

More significantly, city council-elect sought an opinion from independent counsel as to application of the VPA as applied to the city manager position, and as such, city council was obviously aware of Fleming's claim for preference prior to its selection of the permanent city manager on January 3, 1994. The city cannot now argue that city council was not aware of Fleming's claim for veteran's preference when its own actions indicate otherwise.

12. The court questions whether the city seriously pursues these doctrines, as they were not asserted in its answer to the appeal, nor in any of its several briefs to the court. Nevertheless, we will address the same as the issues were raised in new matter.

On January 7, 1994, some four days after the appointment of Mr. Gabler, Fleming filed a complaint requesting appointment to the position based upon veteran's preference. Accordingly, Fleming's claim is not barred by laches, estoppel or waiver.

## Issue 2
### Whether Fleming Has a Claim
### for Relief Against the City

The city contends that, even assuming that Fleming is entitled to veteran's preference, he never submitted an application to city council for purposes of appointment consideration on January 3, 1994, nor did city council solicit applications. Further, the city submits that no testing, objective or otherwise, was required of either Fleming or Gabler. As such, the city argues that city council was under no duty to consider Fleming for appointment and states that since he [Fleming] was not an applicant that he could not have been preferred. In essence, the city argues that all prior actions of the joint board were without authority as relates to the selection of a city manager, and even assuming that the appointment of interim manager was with authority, Fleming's claim should be against the former joint board for failure to credit preference in the interim manager appointment.[13]

The court cannot find that city council did not consider Fleming an applicant for the position of permanent city manager, and the city's argument that city council's

13. It is noted that Fleming seeks redress only retroactive to January 3, 1994, which is the date the permanent manager was appointed, and his appeal does not relate to the propriety of the appointment of interim city manager. Rather, his sole claim is that the process utilized in appointment of the permanent city manager was violative of the VPA.

appointment of Gabler was proper because it did not request or receive applications is misguided. At the time of selection, city council had to be aware that Fleming was an interested applicant for the position both by reason of city council's knowledge of his submission of an application to the joint board and by the action of city council-elect in soliciting an independent legal opinion in December 1993 as to the application of the VPA to the city manager position. Certainly, had city council-elect not considered Fleming an applicant for the position of permanent manager, there would have been no need to request the independent opinion.

Accordingly, the court finds that on January 3, 1994, city council was aware that Fleming was an interested applicant claiming veteran's preference, and the city cannot now argue that Fleming is not entitled to relief because applications were neither requested nor submitted directly to city council.[14] Fleming, therefore, has the status to claim relief against the city.

*Issue 3*
*Whether Fleming Is a "Soldier" As Defined in the Military Code*

In paragraph 11 of its answer to Fleming's complaint, the city denies that Fleming is a "soldier." City council, however, failed to find that Fleming is not a "soldier" in its findings of fact.

"Soldier" is defined in the Military Code at 51 Pa.C.S. §7101 as follows: " 'soldier' means a person who served

14. We note that the successful candidate, Mr. Gabler, also did not submit an application to city council, nor was he tested, but was apparently considered an applicant based upon his submission of materials to the joint board.

in the armed forces of the United States, or in any women's organization officially connected therewith, during any war or armed conflict in which the United States engaged, or who so served or hereafter serves in the armed forces of the United States, or in any women's organization officially connected therewith, since July 27, 1953, including service in Vietnam, and who has an honorable discharge from such service."

Instantly, the city admits that Fleming served in Vietnam from August 1967 through August 1968 as a member of the U.S. Navy. See city's answer, paragraph 12. Fleming also received an honorable discharge as evidenced by exhibit "D" attached to Fleming's reply to new matter and lodged as a matter of public record on September 13, 1972, in the Office of the Recorder of Deeds and Register of Wills of Elk County, book 13, page 460.

Therefore, we find that Fleming is clearly a "soldier" as defined above.

### Issue 4
### Whether Fleming Is Entitled to Preference Under 51 Pa.C.S. §7104(a)

This issue represents the crux of the litigation before the court. Fleming is entitled to veteran's preference if he meets the requirements of section 7104(a) as relates to preference in appointment or promotion for non-civil service, and if, despite meeting all requirements, section 7104(a) as applied to the selection of city manager is constitutional.

In order to properly address Fleming's entitlement to veteran's preference, it is necessary to first discuss several threshold issues as well as the history of litigation

regarding application of the VPA to both appointments and promotions.

What the court terms as "threshold issues" are findings as to the several requirements of section 7104(a). That section, entitled "Preference in appointment or promotion" as relates to non-civil service, provides as follows:

"(a) Non-civil service.—Whenever any soldier possesses the requisite qualifications and is eligible to appointment to or promotion in a public position where no civil service examination is required, the appointing power in making an appointment or promotion to a public position shall give preference to such soldier."

Having determined that Fleming is a "soldier," we now need to determine whether city manager is a public position and whether Fleming is qualified and eligible for appointment.

### (a) Whether the Position of St. Marys City Manager Is a Public Position

The parties cite no cases to the court determining that the position of city manager is a "public position" nor did city council make a finding on this issue.[15] Analysis of other cases, however, leads the court to conclude that city manager is indeed a public position. See *Eggleston v. Philadelphia,* 380 Pa. 158, 110 A.2d 183 (1955) (appointment of unskilled laborers to positions with the City of Philadelphia were public po-

---

15. The court notes that Fleming alleges in paragraph 17 of his complaint that the position of city manager is public. In its answer, the city does not deny this averment and in paragraph 27 of its answer acknowledges that the position of city manager is a public office.

sitions); *Bedeski v. Greater Nanticoke Area School District,* 58 Pa. Commw. 400, 427 A.2d 1269 (1981) (business manager for school district deemed a public officer); *Northeastern Educational Intermediate Unit No. 19 v. Stephens,* 98 Pa. Commw. 127, 510 A.2d 1267 (1986) (a shop instructor at an educational intermediate unit deemed a public position); *Brickhouse v. Spring-Ford Area School District,* 540 Pa. 176, 656 A.2d 483 (1996) (teaching position deemed a public position); *Satler v. PennDOT,* 670 A.2d 1205 (Pa. Commw. 1996).

See also, *Cieri v. Commissioner Insurance,* 178 N.E.2d 77 (1933, Mass.) (Massachusetts court declined to extend tenure protection under Veteran's Tenure Act to a representative on an insurance commission on basis of high level of executive and administrative appointment); and *Smith v. City Council of Hackensack,* 175 A.2d 250 (1961, N.J.) (Veteran's Tenure Law had no application to a tax assessor of a municipality operating under the municipal manager form of government as the position served at the pleasure of council).

In *Bedeski, supra,* the issue of what constitutes a public position arose under the context of Article VI, Section 7, of the Pennsylvania Constitution when a school business manager appealed his removal from that position by the school district. The trial court dismissed plaintiff's appeal, and the issue presented to the Commonwealth Court was whether, as an appointed school business manager, plaintiff was a public officer subject to being discharged summarily by the power which appointed him.

The *Bedeski* court stated the following with regard to the determination of the public nature of an office:

"It is also the law in this Commonwealth that the key considerations in determining whether one is a public officer are the nature of the office, the powers wielded, and the responsibilities which are carried out. *Reese v. Danforth,* 486 Pa. 479, 406 A.2d 735 (1979). In making such a determination the court must look to the nature of the service performed by the incumbent and the duties imposed upon him. *Finley v. McNair,* 317 Pa. 278, 176 A. 10 (1935)." *Id.* at 404, 427 A.2d at 1271.

The court went on to find that a school business manager was a public officer and indicated the following:

"Careful consideration of the appellant's responsibilities and duties as established by the record requires that he be designated a public *officer,* and not a public employee. He was responsible for the adequate and efficient organization, management, and conduct of the school district's business affairs within a framework of establishing policy. He was directly responsible for keeping the superintendent informed of the status of the business office and its operation at all times. The school district's board of directors relied on the appellant's judgment and expertise in business matters. Clearly, the record before us establishes that the school district's finding that Bedeski was a public officer is supported by substantial evidence." *Id.* (emphasis in original)

The powers and duties of the St. Marys city manager are set forth in its Home Rule Charter as 324 Pa.Code, §11.6-602 and include powers and duties similar to, and perhaps even broader than, those set forth in *Bedeski,*

*supra,* for the position of school business manager.[16] The court concludes that the nature of the position of city manager, the powers incident to the position and the responsibilities imposed upon the city manager for the benefit of both city council and the public clearly require that the position of city manager be deemed a public position.

Having determined that city manager is a public position subject to veteran's preference, the city argues that section 7104(a) is in conflict with the Pennsylvania Constitution. This issue will be addressed when the court considers the constitutionality of section 7104(a) as applied to the selection of city manager under the facts of the case sub judice.[17]

### (b) Whether Fleming Possesses the Requisite Qualifications and Is Eligible for Appointment

The qualifications for the position of city manager are set forth at section 601 of the City of St. Marys Home Rule Charter, 324 Pa.Code, 11.6-601(a), which provides as follows:

"Council shall appoint a manager, who shall serve at the will of council, and shall fix the manager's com-

16. See footnote 4, *supra.*

17. In summary, it is the city's position that if city manager is a public position and also a civil office under Article VI, Section 7, of the Pennsylvania Constitution, an inconsistency exists since a civil officer is subject to removal at the pleasure of the appointing power. The city advances that the power of removal is correlative with the power of appointment and that it would be an unreasonable obstruction to have a preferential right to appointment if the appointing power has the immediate constitutional power to then terminate. The city argues that its constitutional power must predominate over the plaintiff's statutory right.

pensation. The manager shall be a registered voter and shall be qualified, by reason of training or experience, to perform all of the duties assigned to the manager under this charter. The manager need not be a resident of the city at the time of his appointment but may reside outside the city while in office only with the approval of council."

The only conditions set forth by the charter are that the applicant be a registered voter *and* that the applicant be qualified by reason of training or experience.

While the record does not reveal if Fleming is a registered voter, the court notes that at paragraph 17 of his complaint it is alleged that he possesses the "requisite qualifications" and is "eligible for appointment" to the public position of city manager. In its answer, the city states that Fleming "may be eligible for appointment" but denies that he possesses the requisite qualifications. Since the city did not deny Fleming's claim of eligibility, the court is satisfied that Fleming is a registered voter and is eligible for the city manager position.

With regard to qualifications, the city states the following at paragraph 9 of its answer to Fleming's complaint:

"Council believes, and therefore avers, that the plaintiff would not properly reflect and represent the philosophies of city council with respect to management of the affairs of the city."

This assertion, however, is based only upon belief, and nowhere in the record is there evidence/testimony submitted by the city to support this assertion. In paragraph 9 of its answer, the city also admits that section

601 provides for "certain qualifications" for the office of city manager but fails to identify other qualifications beyond the general requirements set forth above.

The most recent opinion examining requisite qualifications is *Brickhouse, supra.* In *Brickhouse,* a veteran applied to fill a vacancy on the teaching staff of a public school and established that he was certified to teach in Pennsylvania. The issue arose as to whether, as a veteran, plaintiff was entitled to preference over other non-veteran applicants.

The Commonwealth Court, contrary to the trial court, held the VPA required that plaintiff be hired. In so doing, the court rejected the trial court's determination that plaintiff was not qualified despite holding a valid teaching certificate and rejected the school district's position that plaintiff failed to meet other imposed qualifications beyond that of possession of a teaching certificate.

On appeal, the Supreme Court analyzed the meaning of "requisite qualifications" as set forth at section 7104(a) of the VPA. The court recognized that an "employer must be free to set the hiring requirements of that job as they reasonably relate to the duties to be performed in order to ensure that the person hired will be competent" and further found that "there is no doubt that the school district's criteria for employment were rationally related to the job and that Brickhouse's credentials did not qualify him for the job." *Id.* at 185, 656 A.2d at 487.

Beyond Pennsylvania certification, the school district in *Brickhouse* indicated that it was looking for a teacher with "high academic performance, outstanding recom-

mendations, and current references." *Id.* at 180, 656 A.2d at 485. The applicant was found not to have met these further qualifications, and thus, the court found that he was not entitled to preference in the hiring process.

Instantly, Fleming testified at the public hearing that he met all requirements for the city manager position while the city presented no evidence/testimony as to any other requirements beyond the provision that the applicant be qualified by reason of training or experience to perform the assigned duties. Further, city council did not find that Fleming was not qualified to perform the duties and responsibilities set forth in the Home Rule Charter. Moreover, the city acknowledged in paragraph 4 of its answer to Fleming's appeal that "no particular qualifications were established for the position of city manager beyond those set forth in the St. Marys Home Rule Charter."

Fleming was hired as manager of Benzinger Township on July 1, 1988, and continued in that capacity until the township ceased to operate on December 31, 1993. His resume sets forth past education, post-college courses and seminars, managerial experience and activities which would lead this court to find him qualified, based on training and experience, for the city manager position.

We, therefore, find that Fleming is qualified for the position of St. Marys city manager.

*Issue 5*
*Whether Application of Section 7104(a)*
*of the VPA is Unconstitutional Under the*
*Facts of This Case*

Based upon the foregoing, we have a situation before the court where an applicant is a "soldier," is eligible

for appointment, is qualified and is the only veteran applicant for a public position. If section 7104(a) of the VPA applies, city council would be required to appoint Fleming as city manager. The final question that requires determination is whether section 7104(a) is constitutional as applied to the facts of the instant proceeding.

The constitutional issues are:

(1) Whether section 7104(a) of the VPA is inconsistent with Article VI, Section 7, of the Pennsylvania Constitution.

(2) Whether the selection of city manager is an initial appointment or a promotion.

(3) If the selection is an appointment, whether section 7104(a) is constitutional as applied to the facts of this case.

### (1) *Whether section 7104(a) is inconsistent with the Pennsylvania Constitution*

The court, having hereinabove determined that the position of city manager is a "public position," gives rise to the city's argument that section 7104(a) is inconsistent with Article VI, Section 7, of the Pennsylvania Constitution and is therefore an unconstitutional infringement on city council's discretion and power to appoint. The essence of the city's position is that it would be absurd or unreasonable in the one instance to mandate appointment under section 7104(a) and in the second instance to provide city council with the power to remove the city manager at its pleasure under Article VI, Section 7. It is Fleming's position that the question of removal is not before the court at this time,

as this disposition involves only the propriety of the appointment and/or promotion to a public position.

Article VI, Section 7, of the Pennsylvania Constitution states that:

"All civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. *Appointed civil officers, other than judges of the courts of record, may be removed at the pleasure of the power of which they have been appointed. . . ."* (emphasis supplied)

For the same reasons hereinabove set forth with regard to whether city manager is a "public position," this court has no difficulty in determining that the position of city manager is also that of a "civil officer." See *Reese v. Danforth,* 486 Pa. 479, 406 A.2d 735 (1979); *Finley v. McNair,* 317 Pa. 278, 176 A. 10 (1935), where it was indicated that the factors in determining whether a public position involves a "civil office" are the nature of the office, the powers wielded and the responsibilities which are carried out.

In addition to providing for removal under Article VI, Section 7, the constitution provides for appointment under Article VI, Section 1, as follows:

"All officers whose selection is not provided for in this constitution, shall be elected or appointed as may be directed by law."

Since the constitution does not provide for the selection of city manager, the appointment for this position is to be consistent with the preference indicated in section 7104(a), 51 Pa.C.S. Interestingly, St. Marys Home Rule Charter, section 601, is consistent with Article

VI, Section 7, of the Pennsylvania Constitution in providing that city manager "shall serve at the will of council . . . ."

We find that section 7104(a) is not inconsistent with the power of removal granted under the constitution and is therefore not unconstitutional as being inconsistent with Article VI, Section 7, of the Pennsylvania Constitution. Article VI, Section 7 does not give the city unbridled discretion in appointing a civil officer as the city might suggest but rather relates only to the removal of civil officers. We cannot agree with the city's position that the statutory rights of preference in appointment under the VPA is rendered meaningless simply because city council has the power to remove a civil officer at its pleasure.

### (2) *Whether the selection of city manager was an initial appointment or a promotion*

If the selection of city manager was a "promotion," section 7104(a) would be unconstitutional in application. See *Hoffman v. Township of Whitehall,* 544 Pa. 499, 677 A.2d 1200 (1996), where the constitutionality of section 7104(b) of the VPA as relates to promotions was considered; *Belle Vernon Area School District v. Teamsters Local Union No. 782,* 670 A.2d 1201 (Pa. Commw. 1996), where it was determined that it would be inconsistent to not apply the same rationale involved in civil service examinations to non-civil service appointments/promotions.

While section 7104(b) relates to civil service, as opposed to non-civil service, the language of sections 7104(a) and (b) is consistent with regard to giving pref-

erence in the appointment or promotion to a public position. For this reason, the principles set forth in *Hoffman* are applicable to promotions under section 7104(a).

In *Hoffman, supra,* the Pennsylvania Supreme Court per Justice Flaherty held that, in the context of veterans seeking promotions in public employment, section 7104(b) is unconstitutional. Accordingly, if the selection of St. Marys city manager was a promotion, then, similarly, section 7104(a) is unconstitutional as well.

We have been unable to locate any case similar to the factual situation in the case sub judice to aid in determining whether the selection of the city manager was an appointment or a promotion. This case presents a unique scenario in that the office of city manager arose after two separate municipalities, each with their own manager, consolidated into the City of St. Marys.

The concept of "appointment" versus "promotion" was analyzed in *Commonwealth ex rel. Maurer v. O'Neill,* 368 Pa. 369, 373-75, 83 A.2d 382, 383-84 (1951), as follows:

"It is argued that there is no distinction between an appointment and a promotion . . . . To support this conclusion, reliance is placed on the statement in *Pittsburgh School District Appeal,* 356 Pa. 282, 54 A.2d 17, that 'a promotion is really a surrender of one position and an appointment to a higher one' and it is argued from that that we are now required to hold that an appointment and a promotion are one and the same thing. There is clearly nothing in that language to warrant such a conclusion nor is there a basis in any other

part of the opinion. . . . Webster's New International Dictionary (2nd Ed.) (1943) defines 'promotion' as 'the act of promoting' *i.e.,* 'to advance from a given grade or class as qualified for one higher' and 'appointment' as the 'designation of a person to hold office.' Authorities too numerous to mention offer similar definitions and none propose that the two terms are used interchangeably. To assert that the legislature attempted to do so in drafting the Veteran's Preference Act is erroneous and cannot be sustained . . . . There is a definite difference between an appointment and a promotion and there is nothing in the language of the instant act to indicate that the legislature intended that the two words were to be construed as synonymous." See also, *Belle Vernon, supra.*

In its trial brief, the city notes that "[all] of the employees from both municipalities continued to be employed by the resultant city. As a result, plaintiff [Fleming] was seeking a position not entirely new, because he would be managing many of the same employees and serving much of the same constituency." As such, the city submits that the selection of city manager was a promotion from the position of township or borough manager and was not an appointment to a wholly new position.

While we appreciate and understand the argument of the city as applied to the facts giving rise to the selection of the city manager, we cannot find that the selection was of a purely promotional nature.

First, the City of St. Marys is a separate and distinct form of government from the municipalities consolidated. While the classification of "city" perhaps connotes a larger population or geographical area, it does

not necessarily follow that city manager is an advancement over the manager of a township or borough. There is nothing in the record supporting the argument that the position of city manager was an advance from a grade or class to one higher. Further, there is no indication in the record that the former township manager or borough manager were being considered for a promotion as opposed to an initial appointment which appointment city council was required to make under the Home Rule Charter, 324 Pa.Code §11.6-601(a), which provides that "Council shall *appoint* a manager . . . ." (emphasis added)

Finally, from a purely common sense point of view, it would seem to the court that a promotion indicates an advancement from a lower position to a higher position of one within a particular organization or entity. Appointment, on the other hand, could be either from within an organization or from outside the organization. Here, at the time of the selection of city manager on January 3, 1994, city council was not advancing anyone within the organization, as it had no employees to advance.

Based upon the foregoing reasoning, we conclude that the selection of city manager was through the appointment process as opposed to a promotion, and as such, the holding of *Hoffman, supra,* is not applicable.

(3) *Whether section 7104(a) of the VPA is unconstitutional as applied to the appointment of St. Marys city manager*

Having determined that the selection of city manager is an appointment, not a promotion, and that Fleming

met all the threshold requirements for preference under section 7104(a), the sole remaining issue is whether the VPA is constitutional as applied to the appointment of a city manager where the need for the appointment arises from the consolidation of two municipalities.

Since the court is aware of no prior decision acting on this issue, it appears to be one of first impression. As such, it is important for the court to examine case history to determine if statutory preference accorded veterans seeking appointment in public employment under the unique facts of this case is unconstitutional. A review of this history illustrates that in determining the constitutionality of statutory preference the focus has been on whether some reasonable nexus exists between the basis of preference, and the object to be obtained.

In *Commonwealth ex rel. Graham v. Schmid,* 333 Pa. 568, 573-74, 3 A.2d 701, 704 (1938), our Supreme Court held: "while it may be perfectly lawful to prefer veterans, there must be some reasonable relation between the basis of preference and the object to be obtained, the preference of veterans for the proper performance of public duties. Public policy, as well as constitutional restrictions, prohibits an unrestrained preference as it does a preference credit based on factors not representative of [their] true value. . . .

"The fact that veterans either through voluntary enlistment or conscription have been to wars for the preservation of their country should be given some consideration. It is the greatest service a citizen can perform, and it comes with ill grace for those of us not in such wars to deny them just consideration. . . . [O]n the

other hand, where war service is appraised, in the allotment of public positions, beyond its value, and the preference goes beyond the scope of the actual advantages gained in such service, the classification becomes void and the privilege is held unreasonable and arbitrary. Public policy demands such a rule of law. It is essential to the administration of public affairs that governmental employees be selected on the basis of their ability to perform the duties imposed upon them in an efficient manner, and if public servants are not selected on this basis, the appointing power violates its oath of office; where the legislature so provides, it offends the constitutional mandate." See also, *Brickhouse, supra* at 182, 656 A.2d at 486.

The same principle was considered in *O'Neill, supra,* and, in *Hoffman,* Justice Flaherty quoted from *O'Neill* in emphasizing differences relating to initial appointment and promotions:

"The legislature, in authorizing the addition of 10 percentage points to the veterans' final examination marks in all competitive examinations for higher positions than the original appointments, has placed far too high a value on the benefit to the public service of the military training of veterans. In the case of an original appointment, the training a veteran has received in the armed forces will, no doubt, make him more amenable to the following of orders, the observance of regulations and, in other ways, tend toward making him a desirable employe. But the advantages to the public of this training are not absolute and, as time passes, the proportional benefit accruing to the public from the employment in such a service of veterans in preference to non-veterans gradually diminishes as

both become proficient in the performance of their duties. In determining who is to be awarded a promotion, the skill of the particular examinees in the performance of their tasks is the prime consideration and compared to it the training gained by veterans solely as a result of military service becomes of very little importance. To credit veteran examinees in examinations for successive promotions with the same total of gratuitous percentage points as in the instance of their original appointment to a position is, therefore, a totally unjustified appraisal of the value of their military training and highly prejudicial to the public service." *Hoffman, supra* at 502, 677 A.2d at 1201.

*Schmid, O'Neill* and *Hoffman* make it clear that there must be a reasonable relation between the basis of the preference and the object to be obtained. Veterans are not to be preferred in the assignment of public jobs merely on the strength of being veterans. *Brickhouse, supra.*

Schmid involved application of veteran's preference in appointments to the position of building inspector, and in the case of original appointments, the veteran's preference was determined constitutional. In *O'Neill,* the City of Philadelphia added 10 points to the veteran's examination. The court recognized the holding in *Schmid* but distinguished the original appointment there from the promotion selection before it and determined that granting the same preference to veterans in examinations for promotions as is granted in their original appointments to a public office was unconstitutional. Similarly, in *Hoffman,* the Supreme Court found that constitutional revisions did not render the principle set forth in *O'Neill* invalid and determined that in the con-

text of veterans seeking promotion in public employ-
ment section 7104(b) of the VPA, was unconstitutional.[18]

In *Northeastern Intermediate, supra,* the Common-
wealth Court analyzed both *Schmid* and *O'Neill* and
noted the following:

"It is clear from *O'Neill* and *Schmid* that *in cases
of promotion or original appointment* challenged under
the privileges and immunities clause some sort of nexus
between the veteran's military experience and the job
to which he seeks promotion or appointment must be
established for the preference to be constitutional." *Id.*
at 137, 510 A.2d at 1273. (emphasis supplied)

*Northeastern Intermediate,* thus, restates the nexus
requirements of *O'Neill* and *Schmid,* and recognizes
that said requirement is *equally applicable to both pro-
motions and appointments.*

Therefore, we must examine whether there is a rea-
sonable relationship between Fleming's veteran status
and preferring a veteran for the proper performance
of the city manager duties in a situation such as we
have here where selection of a city manager is ne-
cessitated by the consolidation of two municipalities.
While not agreeing with the city that the selection was
a promotion, we are persuaded by the city's argument
that the same rationale supporting the Supreme Court's
finding that the VPA is unconstitutional as relates to
promotions is equally applicable to the appointment
at issue. We can find no reasonable relationship between
the basis of veteran's preference, and the appointment
involved in this case.

---

18. It is noted that the cases reviewed by the court concerning
promotions involved advancements from *within* the existing organi-
zation.

Instantly, Fleming ended his active military status approximately 27 years ago and, thereafter, remained on inactive duty reserves until being honorably discharged in 1982, some 14 years ago. He served as Benzinger township manager from 1988 to December 31, 1993, a period of approximately six years. Without minimizing the great sacrifice and service that Fleming provided his country, to grant him preference at this time and under the unique facts of this case would be to appraise his war service beyond its value as the preference would go beyond the scope of the actual advantages gained by the service.

As stated in *O'Neill, supra,* quoted in *Hoffman, supra,* and herein quoted at length above, the advantages to the public of military training are not absolute, and the benefit to the public from the military training diminishes as time passes. In the instant case, time has passed, and the proportional benefit accruing to the public from Fleming's military training has diminished over the years as he and other non-veterans, such as Gabler, have become proficient in the performance of their duties, *i.e.,* Fleming as township manager and Gabler as borough manager.[19]

In the appointment herein, the performance by Fleming and Gabler of their respective duties as township manager and borough manager as viewed by city council was of prime consideration, and thus Fleming's military training becomes of little importance when his service as township manager in the interim is capable of assessment. In this respect, the rationale and policy considerations expressed in *Hoffman, supra,* are equally

19. The record, including testimony from the July 8, 1996, public hearing, fails to establish that Fleming's military training of years ago continues to make him a more desirable employee and his employment advantageous to the public so as to provide a reasonable basis for the preferential classification and, hence, the constitutional application of section 7104(a).

applicable to this appointment, *i.e.,* the facts sub judice make the selection somewhat akin to a promotion.

Summarily stated, under the facts presented, there is no nexus between Fleming's military experience and the position of the city manager to which he seeks appointment, and we therefore find section 7104(a) of the VPA is unconstitutional under the unique circumstances involved herein.

Based on the foregoing reasons, we enter the following:

## ORDER

And now, December 5, 1996, upon consideration of all matters of record and briefs, it is ordered and decreed that plaintiff's appeal is dismissed, and the adjudication of the City of St. Marys denying the appointment of plaintiff as city manager is affirmed.